## MAY'S HEIRS vs. MAY'S ADM'R.

[PROCEEDINGS HAD ON ADMINISTRATOR'S PETITION FOR DIVISION OF SLAVES.]

1. *Appeal lies from final decree of distribution, on proceedings instituted by personal representative.*—An appeal lies from a final decree of the probate court, confirming the report of commissioners appointed to make a division of the slaves belonging to an estate among the persons entitled under the will, although the proceedings were instituted by the personal representative, and not by a legatee or distributee.—Code, § 1888, ¶ 4.

2. *Deposition of sole witness.*—When the claim or defence, or a material part thereof, depends exclusively on the evidence of a single witness, his deposition may be taken (Code, § 2318, ¶ 5), and may be read on the trial, although he resides within one hundred miles of the court.

3. *Objection to entire deposition, when made.*—An objection to an entire deposition, on account of defects in the commissioner's certificate, must be made (Code, § 2328) before the trial commences, and comes too late afterwards, though made as soon as the deposition is opened by the court.

4. *Jurisdiction of probate court over ademption of legacies.*—Although there may be cases, involving equitable circumstances, which the probate court, from its peculiar organization and mode of procedure, would be incompetent fully to adjust ; yet it has jurisdiction over the ademption of legacies, as incident to the settlement and distribution of estates.

5. *Admissibility of parol evidence to show whether advancement was intended as satisfaction of provision by will.*—It is now well settled that parol evidence is admissible to show that a subsequent advancement by the testator was not intended as a satisfaction, in whole or in part, of a previous provision by will ; and whenever such evidence is admitted for this purpose, it may be rebutted by similar evidence.

6. *Ademption of legacies by subsequent advancement.*—Testator, after providing for the payment of his debts, directed that " the entire residue" of his property, consisting of lands, slaves, and other property, should be equally divided among his wife and children, and declared that it was his " settled purpose" to make them all equally interested in his estate.    The share of his only married daughter he directed should be divided between her and her husband, one half being secured to her as her separate estate, and the other half vesting absolutely in her husband.    Afterwards he made advancements, consisting of lands, slaves, and other property, approximating in value the share which each would take under the will, to this daughter, another daughter then married, and his eldest son, who were the children of his first wife ; and there was parol evidence (by two witnesses) of his subsequent declarations that this was independent of the provision made for them by will, that most of his property had come by their mother, and that he felt it his duty to give them more than his other children. *Held*, that the advancements were a satisfaction, *pro tanto*, of the provisions by will.

APPEAL from the Court of Probate of Greene.

JOHN MAY died, in Greene county, in 1853, after having made and published his last will and testament in writing, dated April 25, 1849, and attested by three witnesses, which was duly admitted to probate on the 27th June, 1853, and which contained the following provisions:

The first clause directed the payment of all his just debts; the sixth clause appointed his son, Pleasant May, and his son-in-law, James A. Moore, as his executors; and the other clauses were in the following words: "*Secondly.*—After the payment of my debts, as directed above, I desire that the entire residue of my property, of every description, whether real, personal, or mixed, in possession, remainder, or reversion, be equally divided between my wife, Virginia, D. May, and my children, Pleasant May, Mary Ann Moore, and Sarah D. T. May, of my first marriage, and Edwin P. May, Sidney M. May, Willie V. May, Augustus May, and Virginia D. May, of my present marriage, share and share alike, and in all respects equal. *Thirdly.*—It is my will and desire, that the part of my estate hereby bequeathed to my daughter Mary Ann Moore may be equally divided between her and her husband, James A. Moore; that is, that one equal half of said portion be vested in James A. Moore, absolutely, and free from the operation of the present law of the State for the benefit of married women, and that such portion as aforesaid be subject to the entire control of the said James A., and to alienate by him without limitation or restraint; but, of the entire portion falling to the share of the said Mary Ann and James A., the said Mary Ann is to make her own selection of such property as shall constitute the half of the same which she is to receive, at a fair valuation, and then such portion is to be held for her separate use and benefit, and to be in no way liable for any debts or contracts by the said James A. Moore whatever. *Fourthly.*—I further desire that, in the event of the death of the said Mary Ann Moore, without children, then, and in that case, her entire portion of my estate shall pass, absolutely and in fee simple, to her said husband, James A. Moore, forever. *Fifthly.*—Should other children be born to me, as my family may yet further in-

May's Heirs v. May's Adm'r.

crease, then I desire that all such children may have an equal
interest in my estate with those already named, as it is my
settled purpose to make my wife above named and all the
children I may have equally interested in my property. And
the provision herein made for the benefit of my said wife is in
lieu of all right to be endowed in or of my said estate,
or any other provision in the laws of the State for the benefit
of widows. It is made, too, in the confident hope that it will
be ample for her support and comfort through life."

The executors named in the will having renounced their
right to qualify, letters of administration, *cum testamento
annexo*, were granted to Sydenham Moore. On the 13th No-
vember, 1854, said administrator petitioned the court of pro-
bate for the appointment of commissioners to make a division
of the estate; and the court appointed five commissioners to
divide the slaves belonging to the estate. The commission-
ers reported their proceedings to the December term of the
court; and the minor children, by their guardian *ad litem*,
within thirty days afterwards, filed their exceptions to the
report. The substance of these exceptions was, that the com-
missioners had allotted to Mary Ann Moore, Sarah D. T.
Croom (formerly May), and Pleasant May, respectively, an
equal share with the other children, without making any de-
duction for advancements which they had received from the
testator subsequent to the execution of his will. A day was
appointed for the hearing of these exceptions; and on the
trial a bill of exceptions was sealed, at the instance of the
minor children, by their guardian *ad litem*, which presents the
matters now assigned for error.

" At the hearing of said exceptions, proof was offered by
the said minor heirs, by their guardian *ad litem* and next
friend, to show that said John May died in May or June,
1853, leaving his widow, Virginia D. May, and his children,
Pleasant, Mary Ann, the wife of James A. Moore, Sarah D.
T., the wife of Platt S. Croom, Sydenham, Willie V., Augus-
tus, Wiley C., John C., and Edwin P., of whom the six last
named were the children of his second wife, and were under
the age of twenty-one years; that Edwin P. died after the
death of his father; that said Moore married said Mary Ann,
a daughter of said testator, in 1847, and that they lived at

said testator's house, and with his family, until the year 1850; that said Croom married said Sarah in 1850; that said testator, in the fall of the year 1849, gave to Moore and wife property, consisting of lands, negroes, stock of horses, mules, &c., valued at $10,000; that at the same time he gave to his son, Pleasant May, property consisting of lands, negroes, stock of horses, mules, &c., valued at $10,000; that in the fall of 1850, or in the spring of 1851, he gave to his daughter Sarah and her said husband property, consisting of lands and negroes, valued at $9,000." They then read in evidence, the last will and testament of said John May; "after which the administrator offered the deposition of E. M. Boykin, which was then opened by the court. Thereupon, the said minor heirs, excepting by their next friend and guardian *ad litem*, moved the court to reject said deposition, because, 1st, the said witness resides within one hundred miles of the place of holding the court; 2dly, the witness did not sign his testimony as the law requires; and, 3dly, the certificate of the commissioner is insufficient, because he does not certify, 1st, to the identity of the witness, or that he signed his testimony in his presence, and, 2dly, that he wrote down the answers of the witness as nearly in the language of the witness as he could, or that he caused it to be done by any other person, or that the witness himself wrote down the same; and, 4thly, because the commission issued on an insufficient affidavit." This deposition was taken on the affidavit of the administrator's attorney "that a material part of the defence depends exclusively on the evidence of said Boykin." The court overruled the motion to exclude, and the minors heirs excepted.

Said Boykin's testimony was as follows : "In the fall of the year 1851, I was riding with John May, in a buggy, to the plantation of Pleasant May. While on the road, he told me of his family difficulties, and spoke very freely. He said that his two female children by his first wife had been refused visiting him by his second wife, and many other things of like nature. He stated to me, also, that he had given his three children by his first wife a certain quantity of lands and negroes, (not naming how much, or how many,) which he intended them to have independent and exclusive of what he had given them by his will; that it was his intention, besides what

he had given each of these three children, that they
should come in equal with the other children, after his
death, in the division of his property, both real and personal.
In this conversation, he expressly named Pleas., Mary Ann,
and Sarah. He did not state the amount of property, but
said that he had given each of his children by his first mar-
riage a certain amount in land and negroes, independent of
what they would receive at his death." This witness further
testified, that he resided in Dallas county, fifty-seven miles
from Eutaw. The minors objected to the reading of this de-
position, on the ground that the evidence was " illegal and
inadmissible"; but the court overruled their objection, and
they thereupon excepted.

The administrator then introduced one Henry Harless as a
witness, " who stated, that he knew John May in his life time,
had known him since 1836, and was intimate with him, and
that May conversed often and freely with him. Witness did
business for May as overseer, for five years, and was on his
upper plantation, known as the ' Griswold & Garnet place,'
on which about sixty hands were sent to the field,—about
eighty in all. Knows the testator's children, but did not
know his first wife. In 1850, said May gave his daughter
Sarah, Platt Croom's wife, certain property. Remembers a
conversation which took place between said May and himself
after the property was given to Croom's wife. Witness
told him, that he had not given as valuable negroes to Croom
and wife as he had to Moore and Pleasant May. *Witness* (?)
had a list of negroes, when he was conversing about them,
which he showed to *witness*. (?) Witness called the attention
of testator particularly to two negroes, which he had given
to Croom and wife. Testator said, his daughter had chosen
one of them; also, that there was a day coming when he
would make it all up,—that this was not all they would get.
Testator told witness more than a dozen times, first in 1845
or 1846, that he felt it his duty to give his three oldest child-
ren more property than his other children; that his property,
or most of it, had come by his first wife,—that she had helped
him to make it. Witness heard testator say this in 1848.
Moore's wife, Croom's wife and Pleasant May were the child-
ren of testator by his first wife. The said parties, by their

next friend and guardian *ad litem*, objected to so much of the testimony of said witness as commences with the conversation had between himself and said testator, and the statement of such conversation deposed to, as being illegal and inadmissible; but the court overruled their objection, and admitted the testimony; to which they excepted."

This witness, on cross-examination, testified as follows: " Last conversation with May about the subject was in spring of 1850, shortly after he had given negroes to Sarah Croom. He showed me the list he had given. First three years I lived with May, sixty hands went to field; eighty on the place. Mrs. May was present during all, or part, of conversation in 1850. May did not say he had made a will. In 1848, I lived on McNully place; in 1847, went to North Alabama. I lived with Mr. May, as an overseer, in 1843, '44, '45, and '46, and went back to live with him in 1848. Moore, May's son-in-law, lived with him in 1847. In 1849 Croom and Moore farmed together. Moore then lived at May's house. A very short time after May gave negroes to Croom and wife, when conversation in 1850 occurred. Don't know what was the value of May's property. Negroes were low in 1843, and did not rise much till 1849. Don't know what negroes were worth, or would hire for, in 1849."

The minor heirs then offered to read, as rebutting evidence, a paper which was admitted to be in the handwriting of said testator, purporting to be his last will and testament, dated June 20th, 1852, and signed by the testator, but not attested by any witnesses. In this paper the testator stated that he had made advancements, " about equal, in real and personal property," to his three eldest children, Mrs. Moore, Mrs. Croom, and Pleasant May, and directed that equal advancements should be made to his widow and each of his other children; and the fifth clause contained this additional provision: " After my wife and now minor children shall have been advanced equal to my first three children, then, and in that case, the residue shall be equally divided among all my children then living." The administrator objected to this paper being read in evidence, on the ground that it was illegal and inadmissible, and the court sustained his objection; to which ruling the minor heirs excepted.

May's Heirs v. May's Adm'r.

" After argument heard, the court overruled the exceptions to the commissioners' report, and ordered the report to be confirmed."

All the rulings of the court to which exceptions were reserved are now assigned for error. On the part of the appellee a motion was submitted to dismiss the appeal, on the ground that it was not authorized by the provisions of the Code.

WEBB & INGE, for appellants, made these points :

1. Where a parent bequeaths a legacy to a child, and afterwards gives a portion, or makes a provision for the same child, it will be presumed to be in lieu of the legacy, although not so expressed, whenever it is equal to or exceeds the amount, is not contingent, and is of the same nature; and where the portion advanced is less than the legacy, it will operate, at least, as an ademption, *pro tanto*, of the legacy.—2 Williams on Ex'rs, 1143; 2 Story's Equity, § 1111; Roberts v. Weatherford, 10 Ala. 75; Hartop v. Whitmore, 1 P. Wms. 681; 18 Vesey, 150; Clarke v. Burgoyne, 1 Dick. 353; 15 Pick. 136; 2 Amer. Lead. Cas. Eq., 458. Even if it be determined that a portion, *ex vi termini*, must be a definite sum; still, if it is a provision by a parent for a child, the same presumption of satisfaction arises.—Bouvier's Law Dictionary; cases cited *supra*. The testator himself settles this question, by defining the bequest to Moore and wife, which is the same as the others, as a portion. Even in cases of the bequest of a residue, which was formerly an exception to the general rule, the same presumption arises, when it can be ascertained that the testator intended it as a portion. But the bequests in this case are not of a *residue*, as that term is used in this connection. No other devises are made; no other legacies are given; nor is any portion of the estate otherwise disposed of. The direction for the payment of debts is nothing more than the law itself would require.—Bengough v. Walker, 15 Vesey, 507; Thynne v. Glengall, 2 Cases in House of Lords, 131; Roper on Legacies, 374, 377.

2. The modern doctrine, in relation to the admission of parol evidence of the testator's intention, is identical with that which governs in the interpretation of other instruments.

Greenl. Ev., § 298. It is now settled that such evidence is only admissible for the purpose of showing what the testator meant by the act subsequent to the will (Williams on Ex'rs, 1145; Hall v. Hill, 1 Dr. & War. 116); and to render the testator's subsequent declarations admissible for this purpose, they must be made contemporaneously with the advance, so as to constitute part of the *res gestæ.*—Kirk v. Eddowes, 3 Hare, 509; 15 Pick. 133; Williams on Ex'rs, 1145. Tested by this rule, the testimony both of Boykin and Harless was inadmissible, as the declarations to which they deposed were made subsequent to the advancements. Even if this testimony was admissible, it was entitled to but little weight.—18 Vesey, 150; 2 Lead. Cas. Eq., 421.

3. But, if the testimony of Boykin and Harless was admissible, the court erred in excluding the paper which was offered as rebutting evidence.—Kirk v. Eddowes, 3 Hare, 509; Williams on Ex'rs, 1143.

4. The court erred in overruling the motion to suppress the deposition of Boykin, for the reasons assigned when the motion was made. The witness resided within one hundred miles of the court; and though his deposition {was taken on the ground that he was the only witness by whom a material fact could be proved, yet, if alive, he ought to have been produced. Besides, the commissioner's certificate is defective in the particulars specified.—Code, §§ 2322, 2323, 2327.

S. F. HALE, with whom was WM. M. MURPHY, *contra:*

1. The appeal ought to be dismissed, because this is not one of the cases specified in the statute granting appeals.—Code, § 1888.

2. The objection to the deposition of Boykin came too late. Code, § 2328. The affidavit on which the deposition was taken is clearly sufficient.—Code, § 2318, ¶ 5.

3. The probate court is one of special, limited jurisdiction, created by statute, and restricted to its statutory grant of powers and jurisdiction. Jurisdiction is granted to it over the settlement and distribution of estates, and over the subject-matter of advancements by an intestate to his children; but there is no grant of any power over the subject-matter of the ademption of legacies. The conclusion, therefore, is irre-

sistible, that it has no such jurisdiction. The whole doctrine of the ademption of legacies is the creature of equity, and all the cases to be found in the books, except that of Roberts v. Weatherford, 10 Ala. 75, (in which the question of jurisdiction was not raised,) arose in the chancery courts. The probate court has no chancery jurisdiction, but is governed by strictly legal principles. It is bound to settle all estates according to the legal rights of the parties interested, either under the testator's will, or, in case of intestacy, under the statute of distribution; and if any party has equitable rights, he must resort to the proper tribunal to enforce them.—2 Story's Equity, § 1109; Billingsley v. Harris, 17 Ala. 214.

4. The whole doctrine of the ademption of general legacies is founded on the presumed intention of the testator; and the weight of authorities has now settled the doctrine, which was condemned by Lord Eldon and other eminent jurists in the earlier cases, that a general legacy by a father to his child, for a sum certain, is adeemed, or satisfied, by a subsequent advancement, when the legacy and advancement are *ejusdem generis*.—Roper on Legacies, m. pp. 366–75; 2 Williams on Ex'rs, 3d Am. ed., p. 1143. But there is an exception to the rule, which is as well founded as the rule itself—viz., that the doctrine of ademption will never be applied, where the legacy is of a residue, or a part of a residue, or is for an uncertain or indefinite sum. The reason of this exception is, that the presumption being always raised against the direct provisions of the will, the law will not presume the absurd intention that a definite sum should be given in lieu of an indefinite and uncertain sum.—Roper on Legacies, m. p. 377; 2 W'ms on Ex'rs, 1144; Farnham v. Phillips, 2 Atk. 215; Freemantle v. Bankes, 5 Vesey, 85; 4 Bro. Ch. 369; 2 Story's Eq., § 1115.

Again; the doctrine of ademption applies only to legacies of personalty, and has no application whatever to devises of realty.—Roper on Legacies, 378; Jarman on Wills, 178; 2 W'ms on Ex'rs, 1143; 12 U. S. Digest, 204, § 325. How, then, can the respective shares of the three oldest children in the personal estate, which is by law first subject to the payment of debts, be determined, so as to know the amount of the legacy to be adeemed? The advancement must also be personalty, because the presumption of satisfaction will not

arise unless the portion and advancement are *ejusdem generis.*
Holmes v. Holmes, 1 Bro. Ch. 555; Davys v. Boucher, 3 Y.
& Coll. 411; and cases cited *supra.* How much of the ad-
vancements consisted of personalty the record does not dis-
close, nor can this court determine.

But, for another reason, the legacies to Moore and wife
cannot be adeemed by the subsequent gift to them—because
the two provisions are not in favor of the same person.
Under the will, one half of Mrs. Moore's share is given abso-
lutely to her husband, and the other half to herself, during
her life, as her separate estate; while, under the gift, the
whole property vested absolutely in her.—Hooper v. Smith,
23 Ala. 639.

5. The testator's declarations, as proved by Boykin and
Harless, were admissible evidence; not on the principle of
*res gestæ,* but as statements or admissions of the ancestor,
through whom the appellants claim, made before their rights
attached. He was the only person on earth who knew what
he intended, and was the only person who had a right to con-
trol the matter. Such declarations, whether made at the
time of the gift, before, or afterwards, are admissible, to repel
the presumption of an intended ademption.—Ellison v. Cook-
son, 5 Vesey, 84; Deboze v. Mann, 2 Bro. Ch. 137; 7 Vesey,
517; 2 Story's Equity, § 1114; Roper on Legacies, 391;
W'ms on Ex'rs, 1143–4; 3 Phil. Ev., C. & H.'s Notes, p.
1494, § 8; Howell v. Barden, 3 Dev. 444; Reel v. Reel, 1
Hawks, 248; Walkup v. Pratt, 5 Harr. & J. 51–8.

6. The paper which was offered as rebutting evidence
showed on its face that it was incomplete; and being inopera-
tive as a testamentary paper, it was invalid for ever purpose.
1 Pick. 535; 1 Jarman on Wills, 185.

CHILTON, C. J.—1. Since this case was argued, a brief
has been submitted, on the part of Mr. Murphy, insisting that
the appeal should be dismissed, on the ground that it is not
warranted by the Code; but we think the objection cannot
be supported. As to the property distributed, the decree of
the court confirming the report of the commissioners ap-
pointed to make distribution, and ordering it to be made ac-
cordingly, is final, (Code, § 1798); and we think an appeal

lies, in all cases, where a distribution of an intestate's estate is made among distributees, and they should be dissatisfied with such distribution. Whether the estate was ordered to be distributed at the instance of the legatees or distributees, or of the administrator, can make no difference. True, a literal construction of the 4th clause of section 1888 of the Code would seem to indicate that the proceedings there mentioned, from which an appeal lies, should be commenced and prosecuted by legatees or distributees. But, we apprehend, the true meaning and spirit of the section is, that whenever proceedings are commenced and prosecuted for the payment of legacies, or the distribution of estates, no matter by whom, if the court commits an error, the legatee or distributee has the right of appeal. The injury is the same which would arise out of erroneous proceedings, whether set on foot by the executor, or administrator with the will annexed, or by the persons entitled to the distributive share or legacy. Without stopping to inquire whether the motion does not come too late, after the defendants have joined in error and argued the case upon its merits, we are satisfied the motion to dismiss the appeal should be overruled.

2. Before proceeding to discuss the main question, it is proper to determine whether the deposition of Boykin should have been admitted. Section 2318, clause 5, provides that the evidence of a witness may be taken, in a civil case, by either party, "Where the claim or defence, or a material part thereof, depends exclusively on the evidence of the witness." The affidavit to take Boykin's deposition states that on his evidence a material part of the defence depends exclusively, and is a substantial compliance with this provision of the Code.

·3. It is needless to examine the objections to the sufficiency of the commissioner's certificate. The motion went to the exclusion of the entire deposition, and was made after the parties had entered upon the trial. Section 2328 of the Code requires that, where the objection appears upon the deposition, it must be made before the parties enter upon the· trial. The objection, therefore, came too late, and was properly overruled.

4. Another preliminary question has been raised by the

counsel for the appellees; namely, that the probate court has no jurisdiction to pass upon questions of ademption of legacies.  It is urged that, from the limited and special jurisdiction of this court, it must be confined to the execution of the will according to the *legal* rights of the respective parties, and cannot rightfully adjudicate upon matters proper for equitable cognizance.  We readily concede, that there may be cases, involving equitable circumstances, which, from the organization and mode of procedure of the court, it would be incompetent fully to adjust; but, having full power to order distribution of estates, and the payment of legacies, it clearly has the power, as incident to this jurisdiction, to determine the shares of the distributees, and whether the legacies are valid charges upon the estate, or have been satisfied or adeemed.  The jurisdiction is fully sustained by the case of Harrison v. Harrison, 9 Ala. Rep. 470; see, also, Smith v. Smith, 21 Ala. Rep. 761.  The question whether the legacies to the three children of the testator by his first wife are adeemed or satisfied, in whole or in part, by the subsequent advancements of property to them, is one which naturally and legitimately pertains to the proper execution of the will and the due administration of the estate; and although the powers and jurisdiction of the probate courts are limited, yet they necessarily extend to questions of this kind, as indispensable to the proper settlement and distribution of estates.— See Smith & Loveless v. Hall, 20 Ala. Rep. 777.

5. We come, then, to the main question discussed at the bar, namely, whether the legacies to Moore and wife, Mrs. Croom and Pleasant May, are to be considered as satisfied, in whole, or *pro tanto*, by the portions given them off by the testator after making his will.  And we would first take occasion to say, that it is now too well settled to be disputed that parol testimony is admissible, in cases of this kind, to show that the testator did not intend by the subsequent provision to satisfy that previously made in his will.—Biggleston v. Grubb, 2 Atk. Rep. 48; Rosewell v. Bennett, 3 *ib.* 77. In the case last cited, Lord Hardwicke said, he was of opinion that the plaintiff ought to be let into this evidence to show the testator's intention, and that it had been done in several cases; one before Lord King, one before Sir Joseph

Jekyll, and another before himself,—alluding to the above case.—See Chapman v. Salt, 2 Vern. Rep. 646; Pile v. Pile, 1 Cha. Rep. 199; Mascal v. Mascal, 1 Ves. 323; Ellison v. Cookson, 2 Bro. Ch. Rep. 307; Shudal v. Jekyll, 2 Atk. Rep. 518; 3 Bro. Ch. Rep. 61; 1 *ib.* 296; Williams on Exr's, 956, mar.; 7 Ves. 508; 9 *ib.* 577; 4 Madd. Rep. 420; 2 Russ. & M. 310; 6 Sim. 528. The object of such proof is not to change the will, or give to the language employed a meaning different from that which it ordinarily and appropriately has, but merely to show that the testator has not executed or satisfied some bequest contained in it, in whole or in part. The proof, in other words, does not alter, add to, or change the will, but is admitted to show with what intent the subsequent portion, gift, or advancement was made.—See, Jeacock v. Falkner, 1 Bro. Ch. Rep. 296; 1 Greenl. Ev. § 296.

"There are," says Mr. Gresley, "certain classes of cases, in which parol evidence has been allowed incidentally to affect the construction of wills, on the ground that a presumption may be rebutted, and then, *e contra*, corroborated, by any kind of evidence." He cites, as the simplest illustration of the rule, the admission of parol evidence to show that two legacies, coinciding in amounts and in the expressed motives, which the law presumes not to be accumulative, were so intended by the testator.—Gres. Eq. Ev., 209–210. "The effect of such evidence," says Sir John Leach, V. C., in Hurst v. Beach, 5 Madd. 350, "is not to show that the testator did not mean what he said, but, on the contrary, to prove that he did mean what he has expressed."—See, also, Coote v. Boyd, 2 Bro. C. C. 521; Masters v. Masters, 1 P. Wms. 424; Roper on Legacies, by White, p. 317; 6 Cruise's Dig., tit. 38, ch. 6, §§ 45–57, and notes by Prof. Greenleaf. Whenever such parol evidence is admitted, the opposite party has a right, as a matter of course, to rebut it by similar proof.

Whether such parol proof, if consisting, as in this case, of parol declarations, should not be limited to declarations accompanying the gift or advancement, and explanatory of it, thus forming part of the *res gestae*, is a question which, under the view we take of this case, it is unnecessary to decide, inasmuch as, giving the appellees the advantage of the proof, the result is unaffected by it.

11

6. Upon the question whether the legacies to the three oldest children are adeemed by the subsequent gifts to them of land and negroes, we have had some difficulty. The testator expressly declares in his will, that it is *his* "*settled purpose*" to make his wife and all his children "*equally interested*" in his property. He suffers this will to stand, unaltered by codicil or otherwise. The courts of chancery always regard the circumstances of the case, in endeavoring to arrive at the true meaning and intention of the testator; and incline against any construction which would give some of the children double portions, to the partial exclusion of others, whose claims upon the testator's bounty are equally meritorious. Bellasis v. Uthwatt, 1 Atk. Rep. 427, marg. p. What did the testator intend by giving off portions to his three oldest children? The daughters were married, and all of the three children were grown, and to be settled off. It was, therefore, very natural for the parent to give them such amounts of his property as would approximate their respective shares of his estate as provided for in his will.

True, the deposition of Boykin, and the evidence of the witness Harless, show that, subsequently to apportioning off some $10,000 worth of property, consisting of land and negroes, to each of his three oldest children, the testator said that this provision was exclusive of the provision he had made in his will,—that they were children of his first wife, that she had assisted him in making it, and that he intended to give them more than he did to his younger children. It must be borne in mind that none of these declarations were made contemporaneously with the advancements. What was said *at that time* is not proved by any witness. It is hardly probable that, in a matter of such importance as the giving off of thirty thousand dollars worth of property, to three out of nine children, all equally provided for in his will, the testator would have left himself without a *witness to the transaction*, had he designed these portions to be exclusive of the provision made by his will. The most natural and reasonable inference, even to a person unacquainted with the law, would be, that giving off to these three legatees portions of his estate which he had disposed of by his will, approximating the shares to which they would be entitled under the

will, was intended to be a satisfaction of the bequests to them, at least to the extent of the property thus apportioned; and with this the law agrees. The testator must have been apprised of this; and yet the only evidence that the advancements were intended to be accumulative consists of loose declarations, made by the way, liable to be misrecollected, as well as misapprehended, by those who heard them, and which, if made precisely as stated, may have been the result of momentary impulse, growing out of a recurrence to family difficulties to which the testator alluded, as deposed to by one of the witnesses. In view of this, we should feel that we were not warranted in thwarting the purpose of the testator, the *settled purpose* solemnly announced in his will, of giving his children "an equal interest in his estate." Equality is equity; and if the testator, after this solemn announcement, did not intend to do equity as between his children, having, so far as this record discloses, equal claims upon his bounty, we repeat, that he would, no doubt, have furnished more unmistakable evidence of his intention than loose, or, it may be, hasty declarations by the wayside.

But it is argued, that the bequests to the children, and the portions given off or provisions respectively made for the three oldest, cannot be regarded as a satisfaction the one of the other, either in whole or in part, because, 1st, the provision by will is for a *residue*,—is uncertain—may amount to largely more than the provision made by the gift of the testator, or may amount to nothing. We have no disposition to controvert this doctrine in the case before us, for we do not consider the portions provided for in the will as falling within the designation of residue, as that term is understood in this connection. Here, the testator, possessed of a large estate, and but little in debt, so far as we are informed by the record, desires that his debts should be first paid, and that his remaining property should be equally divided. The shares bequeathed are equal shares of *his entire property*. If the fact that the debts are first to be paid changes the bequests into a residue, then, as the law requires the debts first to be paid, and charges the whole estate, both real and personal, with their payment, every bequest, necessarily being out of what remains, would, in this sense, be a portion out of a residue,

and, in such case, there could be no presumed satisfaction of such bequest by subsequent gift *inter vivos*. Such is not the law, with respect to voluntary portions to children. But concede that the term "*residue*" is used in its technical sense, we are still of opinion, that, as the equal distribution of this residue is provided for by the will, and the respective shares constitute portions for the children, these shares may well be satisfied, in whole or in part, by subsequent provisions made by the testator in his lifetime, in setting up in life his older children. We must look to the will, which provides for equality, equality of distribution with respect to the property which the testator then had; for, if he had died immediately after its execution, it would have embraced his entire estate. We must, then, look to the character of the subsequent provisions or portions given off. These are about equal, as respects the three children advanced; and their respective shares vary, perhaps, very little from the amounts to which they would be entitled under the will. The property given off consisted of land and slaves, the same property bequeathed and devised to be shared equally between all the children, not specifically, but generally. Thus, taking a common-sense view of the conduct of the testator, interpreting it according to our experience of the ordinary transactions of mankind, we feel constrained to hold, that the portions given to the older children were so much advanced to them of the provision made for them by the will. This accords not only with justice, with the settled purpose as declared by the testator in his will, but with the policy and spirit of our law as evidenced by our statutes, requiring advancements to be brought into hotchpot—not allowing them, if the party is willing to bring them into the general distribution, to operate as a substitute for, but as a part satisfaction of, what the children advanced would otherwise be entitled to; thus securing equality of distribution among the children.

Had the amounts advanced been inconsiderable, the presumption that the provisions were cumulative and intended so to operate, would have been much less stringent. But when the provision amounts to as much, or more, or approximates very nearly the amount to which the child would be entitled under an equal distribution as provided for in the

will, the presumption becomes very strong that the father was executing his will, in part at least; and under such circumstances, the law requires very clear and satisfactory proof that it was intended by the father to give the children thus advanced double portions. The question is one of intention; and the parent, having made his will, and having provided for the equal distribution of his property among all his children, must be supposed to have decided what, under the then existing circumstances, ought to be the portion of each child; not with reference to the wants of each, but attributing to each the share of the whole which, with reference to the wants of all, each ought to possess.—Pym v. Lockyer, 5 Myl. & Cr. 29. If it becomes necessary, in the opinion of the parent, after making such provision by will, to make advancements to some of the children upon their marriage, or to set them up in life, the equality provided for in the will ought not to be disturbed, except upon the clearest proof that the subsequent gifts were designed as an addition to the provision made by the will, and that such was their character *when they were made;* for, if they operated as a satisfaction, *pro tanto, when made,* we apprehend the subsequent declarations of the testator, without more, would not change their character. Such declarations are only admissible as evidence of the intention with which the subsequent advancements were made. That intention being once ascertained, they can have no effect, as they cannot change the bequests in the will.

It is objected, that the advancements and bequests are not *ejusdem generis.* This makes no difference, if it were the intention of the testator to substitute the one, in whole or in part, for the other.—Jones v. Mason, 5 Randolph's R. 577, and cases there cited. But the objection is not well founded in fact. The portions given off are of the very property of the testator's estate which would have been subject to division among the legatees had the testator died the day before he made the advancements. Be this, however, as it may, if it was *the intention* of the testator to execute his will, in part, by placing the older children in possession of something like the shares which would fall to them under the will, then the legacies are adeemed, *pro tanto.* The following cases show that the intention is to be looked to, and will prevail,

whether the thing given by the will and that advanced be of the same kind or not: Hoskins v. Hoskins, Prec. in Chan. 263; Chapman v. Salt, 2 Ver. R. 646; Jones v. Mason, 5 Rand. Rep. 557; Richman v. Morgan, 1 Bro. C. Rep. 63; 2 *ib*. 394; 15 Ves. 507. The objection, that the gift to Moore and wife by the will differs from that made by the testator when he gave off to them their respective portions, is fully met by this view. He was making provision for these grown and married children, to meet their then exigencies, rather than withhold their shares until after his death.

Our conclusion is, that these gifts were not designed to confer 'double portions, but are to be construed as in subordi- nation to the will of the testator, and the "settled purpose" therein contained, that his children should share equally in his property. If the testator gave them as much as their shares under the will, or more, he has fully executed his will in their behalf. If he has given them less, he has executed it only in part; and the probate court should complete its execution, by making their shares equal.

Let the decree be reversed, and the cause remanded.