## ESTATE OF WILLIAM T. GARRATT.

[No. 9,293; decided May 24, 1892.]

**Ademption.**—Ademption is the Revocation of a Grant, Donation, or the like, especially the lapse of a legacy, by the testator's satisfying it by delivery or payment to the legatee before his death, or by his otherwise dealing with the thing bequeathed so as to manifest an intent to revoke the bequest.

**Ademption.**—To Adeem is to Revoke a Legacy either by implication, as by a different disposition of the bequest during the life of the testator, or by satisfaction of the legacy in advance, as by delivery of the thing bequeathed, or its equivalent, to the legatee during the lifetime of the legator. A specific legacy may be adeemed; if the subject of it is not in existence at the time of the testator's death, then the bequest entirely fails.

Ademption.—The Question of Ademption is Purely One of Fact and not of intention, differing in this respect from revocation, which is purely one of intent.

Ademption.—Ademption is the Extinction or Withholding of a Legacy in consequence of some act of the testator, which, though not directly a revocation of the bequest, is considered in law as equivalent thereto or indicative of an intention to revoke. The ademption of a specific legacy is effected by the extinction of the thing or fund, without regard to the testator's intention; but where the fund remains the same in substance, with some unimportant alteration, there is no ademption.

Ademption.—The Very Thing Bequeathed must be in Existence at the death of the testator and form part of his estate, otherwise the legacy is wholly inoperative.

Ademption—Change Worked by Organization of Corporation.—Where the owner of land devises the same, together with the buildings and business thereon conducted, and thereafter organizes a corporation and leases the property to it, he being the principal stockholder in the corporation and continuing to manage the business as before, there is no change in the substance of the property, and on his death the devisees and legatees named in his will are entitled to a distribution of the property as therein specified.

B. Noyes and Lloyd & Wood, for Benjamin F. Garratt, the petitioner.

John A. Wright, for William T. Garratt, Jr.

L. H. Sharp and H. A. Powell, for Anna G. Garratt, widow and residuary legatee.

COFFEY, J. The court has been favored with approximately one hundred pages of briefs and an equal number of pages of oral statement, argument and testimony in this matter, and it is proper to say that both sides of the controversy have been presented with exemplary clearness and ability. It has been most thoroughly and fairly discussed, and whatever difficulty the court labors under in deciding the points at issue is due to the strength with which the respective counsel have presented their opposing theories.

This is an application for distribution before close of administration under section 1658 of the Code of Civil Procedure.

The application depends upon a certain clause in the will of William T. Garratt, who died on January 14, 1890, in San Francisco. The will bears date April 4, 1883, at which time the testator was the owner of a brass foundry on the corner of Fremont and Natoma streets in San Francisco, with the land upon which the foundry was situated, the buildings, stock, tools, machinery and fixtures, and all the appurtenances of such a business.

The will is here inserted in full:

"San Francisco, April 4, 1883.

"This is my last will disposing of my worldly effects.

"To my daughter Emma the residence property she now resides in, also the springs and lands known as the California Seltzer Springs, and the sum of ten thousand dollars. To my daughter Amelia the residence property she now resides in, also the five-acre lot in Oakland, and the sum of ten thousand dollars. To my daughter Clara the lot on Howard street, between Twenty-second and Twenty-third streets.

"To my daughter Julia the lot on Fremont street, between Howard and Folsom streets, also the sum of ten thousand dollars. To my daughter Mary Alice all interest I have and am to have in the two fifty-vara lots on Bryant street, between 4th and 5th streets. The land known as the tide lands to be equally divided with Emma, Amelia, Clara, Julia and Mary Alice, hoping that it will be kept as a whole for many years.

"To my brother Benjamin F. Garratt, and my son William, and my son Milton, the business and real and personal property corner of Fremont and Natoma streets, consisting of buildings, land and tools and stock, with what stock may be at the different agencies, the moneys bequeathed in this my last will to be paid out of the moneys due me on book accounts and to be paid in equal installments of one-third and to be paid in three years, my just debts to be paid first, and the balance of the book accounts to be equally divided or left as a whole to the firm of William T. Garratt & Co., consisting of my brother Benjamin, my son William and my son Milton, the firm to allow my father, Joseph Garratt, the sum of seventy-five dollars for each and every month of his life;

and also the sum of five thousand dollars to my sister Rose, and three thousand dollars to Miss Ellen Little, these sums to be paid in three installments, same as above mentioned. To my wife Anna all my stocks, consisting of insurance and steamboat and railroad, and my life insurances, together with the homestead property of every kind. To my son William and my son Milton the land and buildings known as Nos. 513 and 515 Market street, near First. My wife Anna to take charge for William and Milton, collect or have collected the rents, and use the same, if needed, for William and Milton's benefit; all property not mentioned, real or personal, to my wife Anna. In case of my wife's death, then the property, both real and personal, to be divided as follows, this being the property left for my wife Anna: To my daughter Emma my life insurance in the Connecticut Mutual Insurance Company, amount ten thousand dollars. To my daughter Amelia my steamboat stock in the California Steam Navigation Company, excepting one hundred shares I leave for Capt. Domingo Marcucci. To my daughter Clara one-half of the lots and buildings now used as the homestead, No. 405 Sixth street, the other half of the lots and building No. 405 Sixth street, and all the furniture and personal property, to be divided as follows, excepting what I shall dispose of as per schedule attached: My sons-in-law, William A. Allen and James Bond, to have my books in library and book-cases, and portraits of the family to go to each as painted for, the other painted by Nahl to go to my son William, those painted by Wise to go to my son Milton. My scrap books to my brother Benjamin, with what cabinet I may have including my desk and papers in the library desk meant the writing table and fixtures, and what is in the laboratory to go to the firm of W. T. Garratt & Co.; I prefer this style of the firm to be kept; the personal and one-half of the homestead lots and buildings, No. 405 Sixth street, to be disposed of as follows: To my daughters Emma and Amelia and Julia each to have one-third, and any property not mentioned that would of become the property of my wife Anna by this my last will to be divided between my daughters Emma, Amelia and Julia. I appoint my wife Anna to take charge and administer on the same, and without bonds, and in case of her death then my

brother Benjamin F. Garratt, and my father Joseph Garratt, and without bonds; the word Emma was written in the margin before signing.

"W. T. GARRATT.

"Witness, GEO. W. GATES.

"Witness, ARCHIBALD L. TAYLOR."

The clause under which this application is made is as follows:

"To my brother Benjamin F. Garratt, and my son William, and my son Milton, the business and real and personal property corner of Fremont and Natoma streets, consisting of buildings, land and tools and stock, with what stock may be at the different agencies, the moneys bequeathed in this my last will to be paid out of the moneys due me on book accounts and to be paid in equal installments of one-third and to be paid in three years, my just debts to be paid first, and the balance of the book accounts to be equally divided or left as a whole to the firm of W. T. Garratt & Co., consisting of my brother Benjamin, my son William, and my son Milton."

At the time of making this will the sole constituent of the firm of W. T. Garratt & Co. was the testator himself.

It is manifest, therefore, that in mentioning the names of his brother and sons as members of the firm he was alluding to the future. About two years after executing the will he conceived the idea of incorporating the business, and a corporation was formed bearing the name of W. T. Garratt & Co., in which the testator was the prime mover, holding about four-fifths of the stock. Shortly thereafter, and on June 15, 1885, the testator executed a lease and agreement between himself, W. T. Garratt, as party of the first part, and the corporation, W. T. Garratt & Co., as party of the second part, whereby he leased this business and personal property, not including the real property upon which it was situate, to the corporation for nine years at an annual rent of $20,111.11, or an aggregate sum of $181,000, and provided that when the last payment should have been made, with interest at four per cent per annum on overdue payments, he would execute a bill of sale to the corporation, or the property should be-

come the property of the corporation, in which he was at that time and continued to be the chief stockholder, owning almost the entire body of stock. In that agreement he included two thousand three hundred and ninety shares of the capital stock which he agreed to transfer to the corporation, thus virtually retiring so much of the stock and leaving in his own name fifteen hundred and fifty-six shares. He died a few years thereafter. Up to the time of his death testator continued in the business and managed and directed the operations of the corporation in much the same manner as he had done prior to its creation. At the time of his death some of the annual rents were overdue and unpaid, $72,000 or thereabouts, and the remainder was to become due.

The first question presented by this proceeding, according to the claim of the petitioner for partial distribution, is, To whom does the money due and to become due from the corporation to W. T. Garratt, for the rent of the business, go by the terms of the will?

Counsel for petitioner claim that section 1301 of the Civil Code furnishes the answer to this question. That section reads as follows: "An agreement made by a testator, for the sale or transfer of property disposed of by a will previously made, does not revoke such disposal; but the property passes by the will, subject to the same remedies on the testator's agreement, for a specific performance or otherwise against the devisees or legatees, as might be had against the testator's successors, if the same had passed by succession."

Counsel for petitioner contend that inasmuch as the property was agreed to be sold, not sold, by testator to the corporation, the whole subject of the bequest passes to petitioner and the two other legatees, subject only to such remedies as the corporation is entitled to upon said agreement of lease and sale. Section 1301 gives the petitioner and his colegatees not the claim against the véndee but the property itself, in specie, limited only by the right of the vendee to complete the inchoate purchase.

Counsel for residuary legatee contend, on the contrary, that the quoted section of the Civil Code does not apply to the case at all; and they insist the only question involved is one of ademption of legacies. Section 1301, Civil Code, and the suc-

ceeding sections, by their terms, apply to questions of revocation and not to ademption.

In law, says the dictionary, ademption is the revocation of a grant, donation, or the like, especially the lapse of a legacy, (1) by the testator's satisfying it by delivery or payment to the legatee before his death; or (2) by his otherwise dealing with the thing bequeathed so as to manifest an intent to revoke the bequest.

To adeem is to revoke a legacy either by implication, as by a different disposition of the bequest during the life of the testator, or by satisfaction of the legacy in advance, as by delivery of the thing bequeathed, or its equivalent, to the legatee during the lifetime of the legator. A specific legacy may be adeemed; if the subject of it be not in existence at the time of the testator's death, then the bequest entirely fails.

The question of ademption is purely one of fact and not of intention, differing in this respect from revocation, which is purely one of intent.

Bouvier says that ademption is the extinction or withholding of a legacy in consequence of some act of the testator, which, though not directly a revocation of the bequest, is considered in law as equivalent thereto or indicative of an intention to revoke. The ademption of a specific legacy is effected by the extinction of the thing or fund, without regard to the testator's intention; but where the fund remains the same in substance, with some unimportant alteration, there is no ademption.

The very thing bequeathed must be in existence at the death of the testator and form part of his estate, otherwise the legacy is wholly inoperative.

Did the property bequeathed to the petitioner here form a part of the estate of William T. Garratt? Counsel for residuary legatee claim that by the contract in evidence here William T. Garratt had parted with all beneficial interest in the property to William T. Garratt & Co., the corporation; that the interest which W. T. Garratt held at the time of his death was a right to the money agreed to be paid; that the only interest which he held in the property itself was the naked legal title, simply for the purpose of securing to him the payment of the money due from W. T. Garratt & Co.; that he had no

beneficial interest in the property, and that none could or did pass by his will to the petitioner; that inasmuch as the property itself, the beneficial interest therein, was not in William T. Garratt, it cannot pass to petitioner; that it being a specific bequest he cannot have money due upon the contract, nor can he have the shares of capital stock which he claims of W. T. Garratt & Co.; that the only thing which he takes is the naked legal title in trust for the beneficiary who is entitled to the purchase money under the residuary clause of the will.

Mr. John A. Wright, of counsel for William T. Garratt, Jr., in a brief filed by him, declares that the whole controversy is controlled by the provisions of sections 1303 and 1304 of the Civil Code, and not by the provisions of section 1301 of the Civil Code, as asserted by the briefs of counsel for Benjamin F. Garratt.

Section 1303 of the Civil Code provides that any "act of a testator by which his interest in a thing previously disposed of by his will is altered but not wholly devested is not a revocation, but the will passes the property which would otherwise devolve by succession"; and section 1304 provides for an exception to this general rule in cases where the subsequent instrument expresses the testator's intent to revoke his will thereby or contains provisions wholly inconsistent therewith.

Mr. Wright considers that the court is dealing with such a case as is provided for by section 1303.

I am inclined to the opinion that there was no change in the substance of the property possessed by the senior Mr. Garratt at the time of making his will, and that the corporation, with all its powers, franchises and privileges, was only William T. Garratt under another name; indeed the name itself, of which he was justly proud and desirous of perpetuating, remained the same, and the control, management and direction of affairs was in no material respect altered or modified until after his death.

The court agrees with the counsel for petitioner and adopts his argument and conclusions as hereinunder expressed.

The only change in the testator's business arrangements which can be claimed as an evidence of change of intention,

as expressed in the will, was the incorporation of W. T. Garratt & Co., a corporation.

That the testator did not consider his position in any respect different after the formation of the corporation is evident from the fact that he continued to manage and direct the affairs of the business; his word was law, and, while his acts were sometimes ratified by the board of directors, they were never questioned by anyone. Mr. Taylor, an employee of the corporation, kept his private books as he had done before. The testator leased the personal property to the corporation for nine years, and by a separate instrument leased to it the real estate for five years, which last-named lease has expired. It is not reasonable to suppose that he intended to leave to one person the land, and to another a majority of the capital stock in the corporation which occupies said land with its extensive works, and which at this moment has no agreement as to the rent it shall pay.

The expiration of the lease of the real estate has left the corporation entirely at the mercy of the devisees of the land as to the amount of rent it must pay, and has made the corporation liable to be turned out of possession at short notice. To a business of the nature of Mr. Garratt's this might be disastrous, and it cannot be said that testator meant to so dispose of his property as to leave such conflicting interests.

On the other hand, to hold that the testator meant his interests as stockholder and tenant, as well as his interest as landlord, to become vested in the same hands, will avoid any such complication as the one just referred to, and would seem to carry into effect the testator's wishes.

It seems to the court, as it did to counsel for petitioner, that "an intelligent effort to ascertain what the writer (testator) meant" can result in no other conclusion than that Mr. Garratt, after the formation of the corporation, considered that matters stood on about the same footing as before, and expected and wished that his brother and sons should become the owners, not only of the land on which the foundry stood, but of all his interests in the foundry itself, which interest at the time of his death consisted of three thousand nine hundred and forty-six shares out of five thousand shares of the corporation's capital stock; of said three thousand nine hun-

dred and forty-six shares two thousand three hundred and ninety shares were included in the agreement of sale to the corporation.

If these views be correct, the petitioner herein is entitled to one-third of the following described property:

First—The real estate, corner of Fremont and Natoma streets, fully described in the inventory, together with the rent accrued thereon since the death of testator;

Second—The business, stock, tools, etc., owned by the testator on April 4, 1883, together with similar property by which it has been replaced; subject, however, to the right of W. T. Garratt & Co., a corporation, to purchase the same on payment of the unpaid portion of the rent specified in the lease introduced in evidence as Exhibit "D";

Third—Three thousand nine hundred and forty-six shares of the capital stock of W. T. Garratt & Co., a corporation, subject to the right of said corporation to purchase two thousand three hundred and ninety shares thereof, as provided in said Exhibit "D."

Let a decree be drawn in conformity with these conclusions.

---

### ADEMPTION OF LEGACIES.

Ademption Defined.—"Ademption is the technical term used to describe the act by which a testator pays in his lifetime to his legatee a general legacy which, by his will, he had proposed to give him at death; or else the act by which a specific legacy has become inoperative, on account of the testator having parted with the subject": Cozzens v. Jamison, 12 Mo. App. 452. See, also, Connecticut Trust etc. Co. v. Chase (Conn.), 55 Atl. 171. Notwithstanding the clearness and conciseness of this definition, it is, nevertheless, often confused with advancement and satisfaction, and used interchangeably with these terms. The doctrine of advancement applies only in cases of intestacy, or where the testator in his will has directed that property given to his children in his lifetime should be accounted for by them: Allen v. Allen, 13 S. C. 512, 36 Am. Rep. 716; McFall v. Sullivan, 17 S. C. 504. The distinction between ademption and satisfaction is pointed out by Lord Romilly to be as follows: "In ademption, the former benefit is given by a will, which is a revocable instrument, and which the testator can alter as he pleases, and consequently when he gives benefits by a deed subsequently to the will, he may, either by express words, or by implication of law, substitute a second gift for the former, which he has the power of altering at his pleasure. Consequently, in this case the law uses the word 'ademption,' because the bequest or devise contained in the

will is thereby adeemed, that is taken out of the will. But when a father, on the marriage of a child, enters into a covenant to settle either land or money, he is unable to adeem or alter that covenant, and if he gives benefits by his will to the same objects, and states that this is to be in satisfaction of the covenant, he necessarily gives the objects of the covenants the right to elect whether they will take under the covenant, or whether they will take under the will. Therefore, this distinction is manifest. In cases of satisfaction the persons intended to be benefited by the covenant, who, for shortness, may be called the objects of the covenants, and the persons intended to be benefited by the bequest or devise—in other words, the objects of the bequest—must be the same. In cases of ademption they may be, and frequently are, different": Chichester v. Coventry, L. R. 2 H. L. Cas. 17. And see Tussaud v. Tussaud, 9 Ch. D. 363; Cooper v. McDonald, L. R. 16 Eq. 258.

The doctrine of ademption has no application to property taken by descent, but only to that taken by devise: Stokesberry v. Reynolds, 57 Ind. 425.

**Ademption by Advancement to the Testator's Children.**—One of the most common modes of ademption is by the advancement of a portion to a legatee by one standing in loco parentis to him. It is universally recognized as the common law that where, in such cases, an advancement takes place, it is the presumption that it is intended in lieu of the legacy, which is to be regarded as a portion; and the reason for this rule is stated in Richardson v. Eveland, 126 Ill. 37, 18 N. E. 308, as follows: "The rule is based upon the equitable presumption that a parent, or one standing in loco parentis, and owing a like natural duty to all of his children, would not, after having voluntarily established the portion each should receive of his estate, take from one to his detriment, for the purpose of benefiting another. The natural obligation of the parent to provide for his offspring is an imperfect obligation, and the portion of each child remains wholly under the control of the testator, and may be changed at his pleasure. The rule is based upon the presumed intention of the testator, where he owes a like common obligation to all, not to give one of the objects of his bounty a double portion of his estate to the injury of the others. The rule was created by courts of equity on account of their leaning, as it is said, against double portions, and to facilitate the equitable distribution of estates. Hence, if a legacy be given by a parent, or one standing in loco parentis, and the testator afterward makes an advancement, or gift, of money or property ejusdem generis, to the same beneficiary, the presumption will arise that the gift was intended in satisfaction of, or substitution for, the prior legacy, and unless this presumption be rebutted, an ademption in full, or pro tanto, as the gift is equal to, or less than, the prior benefit, will take place. When the equitable presumption arises, and the rule applies, the ademption, in whole or in part, is complete by the act of the donor in conferring the two benefits,

from which the intention of substitution is implied." In accord with this are Rogers v. French, 19 Ga. 316; Haywards v. Loper, 147 Ill. 41, 35 N. E. 798; Low v. Low, 77 Me. 37; Wallace v. DuBois, 65 Md. 153, 4 Atl. 402; Paine v. Parsons, 14 Pick. 318; Van Houten v. Post, 32 N. J. Eq. 709, 33 N. J. Eq. 344; Langdon v. Astor, 16 N. Y. 9, 3 Duer, 477; Matter of Townsend, 5 Dem. (N. Y.) 147; Hine v. Hine, 39 Barb. 507; Gill's Estate, 1 Pars. Eq. Cas. (Pa.) 139; Swoope's Appeal, 27 Pa. 58; Watson v. Lincoln, Amb. 325; Clarke v. Burgoine, Dick. 353; Suisse v. Lowther, 2 Hare, 424; In re Peacock's Estate, L. R. 14 Eq. 236; Hopwood v. Hopwood, 7 H. L. Cas. 728; Pym v. Lockyer, 5 Mylne & C. 29; Booker v. Allen, 2 Russ. & M. 270; Platt v. Platt, 3 Sim. 503; Scotton v. Scotton, 1 Strange, 235; Barrett v. Rickford, 1 Ves. Sr. 510; Ellison v. Cookson, 1 Ves. Jr. 100; Hinchcliffe v. Hinchcliffe, 3 Ves. Jr. 516; Trimmer v. Bayne, 7 Ves. Jr. 508; Robinson v. Whitley, 9 Ves. Jr. 577; Hartopp v. Hartopp, 17 Ves. Jr. 184.

The most usual event upon which an advancement is held to work an ademption of the bequest is the marriage of the legatee: Roberts v. Weatherford, 10 Ala. 72; Paine v. Parsons, 14 Pick. (Mass.) 318; Richardson v. Richardson, Dud. Eq. (S. C.) 184; Hartop v. Whitmore, 1 P. Wms. 681; Dawson v. Dawson, L. R. 4 Eq. 504; Nevin v. Drysdale, L. R. 4 Eq. 517; Carver v. Bowles, 2 Russ. & M. 301; Jenkins v. Powell, 2 Vern. 115. It is, however, not necessary that the gift be made on marriage or any other special occasion with reference to the donee: Leighton v. Leighton, L. R. 18 Eq. 458; and where a father declared that his daughter should have more on his death, a gift upon her marriage is no satisfaction of a prior legacy: Debeze v. Mann, 2 Bro. C. C. 165, 1 Cox, 346.

Money expended on the education of a child during the testator's lifetime, whether general or professional, is not an advancement within the meaning of the rule: Bird's Estate, 132 Pa. 164, 19 Atl. 32; Cooner v. May, 3 Strob. Eq. (S. C.) 185; White v. Moore, 23 S. C. 456.

For an advancement to work an ademption, it must be certain, and not merely contingent, and be of the same character as the legacy: Benjamin v. Dimmick, 4 Redf. (N. Y.) 7; but small gifts of money made from time to time are not to be taken into account: Schofield v. Heap, 27 Beav. 93; Watson v. Watson, 33 Beav. 574; In re Peacock's Estate, L. R. 14 Eq. 236. So, where there is a great disparity between the gift made inter vivos and the legacy, the latter being largely in excess of the former, such gift will not be regarded as a portion, or an advancement so as to work an ademption, in the absence of any showing of the testator's intention to that effect: State v. Crossley, 69 Ind. 203.

The advancement must be one for the benefit of the legatee in fact, and not merely colorable; so where a testator gave his daughter an unconditional bond, payable immediately, but he always kept it, his object being to screen himself from taxes, and it was so re-

garded by the daughter, and by will he gave portions to all his daughters, it was held that, upon his death, it should be set aside, and that that daughter might take with the rest: Ward v. Lant, Prec. Ch. 182.

The gift made may also be an imperfect one and be perfected by will, as where the will recites that the testator has given all he intended to give to certain legatees, and taken their notes therefor, which the executors were directed to deliver up as satisfied and discharged; this was held to operate as a gift to one of the legatees of a note executed by him for money not at the time intended as a gift, and which both maker and payee expected to be paid: Tillotson v. Race, 22 N. Y. 122; and see, also, Lawrence v. Mitchell, 48 N. C. (3 Jones L.) 190.

Ademption by Advancement to Strangers.—The rule holding that advancements to children by one standing in loco parentis is peculiar in this, that strangers are more favored than the testator's own children, for gifts to the former can in no wise be considered a portion, but rather a bounty, and so they are held to be, not in satisfaction of a legacy given by a prior will, but cumulative, and the presumption is in favor of the latter: Rogers v. French, 19 'Ga. 316; Richardson v. Eveland, 126 Ill. 37, 18 N. E. 308; Evans v. Beaumont, 4 Lea (Tenn.), 599; Powel v. Cleaver, 2 Bro. C. C. 499; Suisse v. Lowther, 2 Hare, 424. This rule has been the subject of much adverse criticism on account of its harshness, but has nevertheless been followed as a correct exposition of the common law, unless altered by statute. By statute in Kentucky, strangers and children of the testator were put on the same footing as to advancements: Duncan v. Clay, 13 Bush, 48; and in California it is provided that "advancements or gifts are not to be taken as ademptions of general legacies, unless such intention is expressed by the testator in writing": Cal. Civ. Code, sec. 1351; thus removing an unjust presumption against the testator's children.

By Whom and to Whom Made.—It is not necessary that the advancement be made directly by the testator; so where he procures a third person to convey property to his daughter, for a consideration moving from himself, the presumption is that it is meant in satisfaction of the legacy, the same as when he himself conveys: Piper v. Barse, 2 Redf. (N. Y.) 19.

As to whether a gift to a son in law is to be considered as an advancement, there is some conflict of authority. In Hart v. Johnson, 81 Ga. 734, 8 S. E. 73, the testator advanced a sum of money, equal in amount to a bequest to one of his daughters, to her husband, and it was held to be no ademption, the father not stating whether it was in lieu of the legacy or not. So a conveyance of realty to a son in law was held not to be an advancement to his wife, if not shown to have been so intended: Rains v. Hays, 6 Lea, 303, 40 Am. Rep. 39. A simple gift to a husband after marriage does not

adeem a legacy to his wife, daughter of the testator, nor does a sum to provide a wedding outfit: Ravenscroft v. Jones, 32 Beav. 669.

In Dilley v. Love, 61 Md. 603, the court held an advancement by a father in law to the husband of his daughter was an advancement to the latter; and that it was held an ademption pro tanto where the testator gave a legacy to his adopted daughter to be paid her on marriage, and she marrying during his lifetime, he gave her husband thereafter sums of money from time to time to advance him in business: Ferris v. Goodburn, 4 Jur., N. S., 847.

For a Particular Purpose.—As before stated, where the testator stands neither in a natural nor assumed relation of parent to the legatee, the legacy is considered as a bounty and is not adeemed by a subsequent advancement. This rule is subject to an exception, however, and that is where the legacy is given for a particular purpose, and the testator afterward fulfills it in his lifetime, or gives money to that end: Hine v. Hine, 39 Barb. (N. Y.) 507; In re Ritter's Estate, 10 Pa. Super, Ct. 352; Monck v. Monck, 1 Ball & B. 298. Where, therefore, a testator in his will directs his executors to make good to a client any loss she might sustain by reason of a certain investment which he had made for her, and subsequently to the execution of the will he refunds her the exact amount of the principal, and she agrees to have no further claim upon him whatever, she cannot, after his death, recover under the will a loss resulting from costs and taxes, all of which were not referred to on the settlement: Johnson's Estate, 201 Pa. 513, 51 Atl. 342. See, also, Keiper's Appeal, 124 Pa. 193, 16 Atl. 744. But where a husband leaves his wife £200 to be paid ten days after his decease, and several years after, at the request of his wife, during his last illness, she not knowing the contents of the will, he gives her £200, so that she might have money immediately on his death without interference of the executors, this is not such a particular purpose as to bring the case within the rule, and the legacy is not adeemed: Pankhurst v. Howell, L. R. 6 Ch. App. 136. In Rosewell v. Bennett, 3 Atk. 77, the testator provided in his will for £300 for putting his son as apprentice; in his lifetime he spent £200 in placing him out as clerk; and it was held that evidence was admissible to show that this was intended as an ademption.

A testatrix by her will bequeathed £500 to a niece of her deceased husband, with these words, "according to the wish of my late beloved husband," and subsequently, during her life, she paid the niece £300, making an entry in her diary that such payment was a legacy from the legatee's uncle. The court held the legacy adeemed to the amount of the money advanced: In re Pollock, L. R. 28 Ch. D. 552, in which case the Earl of Selborne, S. C., said: "To constitute a particular purpose within the meaning of that doctrine it is not, in my opinion, necessary that some special use or application of the money, by or on behalf of the legatee (e. g., for binding him an apprentice, purchasing for him a house, advancing him upon marriage

or the like) should be in the testator's view. It is not less a purpose, as distinguished from a mere motive of spontaneous bounty, if the bequest is expressed to be made in fulfillment of some moral obligation recognized by the testator, and originating in a definite external cause, though not of a kind which (unless expressed) the law would have recognized, or would have presumed to exist."

The doctrine of ademption arising from advancement for a particular purpose applies only where the testator gives the legacy for one particular purpose alone and afterward gives a sum of money with the same end in view. So, where a testator left £1,000 for the main-tenance of his grandson, with directions that the executors might apprentice him, and use the interest on the money therefor, so much as not used to be transferred to him when of age, and the testator, in his lifetime, subsequently apprenticed him and paid out £126, this was held no ademption, the money being bequeathed for more than one purpose: Roome v. Roome, 3 Atk. 181.

Ademption is merely presumed, in this class of cases, and may be rebutted by evidence: Monck v. Monck, 1 Ball & B. 298; and parol evidence is admissible to repel or strengthen this presumption: In re Ritter's Estate, 10 Pa. Super. Ct. 352.

**Requisites for Ademption by Advancement to Children.**—In order for the doctrine of ademption by advancement to apply, it is neces-sary that the thing given in satisfaction be of the same nature and equally certain with the thing bequeathed, as land is no satisfaction for money, nor vice versa: Gilliam v. Chancellor, 43 Miss. 437, 5 Am. Rep. 498; Bellasis v. Uthwatt, 1 Atk. 426; nor is a house for a pecuniary legacy: Dugan v. Hollins, 4 Md. Ch. 139; Swoope's Appeal, 27 Pa. 58.

This rule does not mean that the gift must be in all respects identi-cal with the legacy in order to work a satisfaction of the latter. It is sufficient if substantially the same, and a small variance in the time of payment, or other trifling differences, does not vary the ap-plication of the rule: Hine v. Hine, 39 Barb. (N. Y.) 507.

Where the testator left his son £500 by will, and afterward took him into partnership in his jewelry business, the stock of which was worth £3,000, it was held no ademption of the legacy, the gift not being ejusdem generis: Holmes v. Holmes, 1 Bro. C. C. 555. So the value of a beneficial lease granted a son was held no satisfaction of a legacy: Grave v. Salisbury, 1 Bro. C. C. 425. On the other hand, a bequest of a share in powder works, £10,000 in value, charged with an annuity of £20 for a life was held a satisfaction of a portion of £2,000: Bengough v. Walker, 15 Ves. Jr. 507. In Tuckett-Lawry v. Lamoureux, 1 Ont. 364, 3 Ont. 577, a Canadian case, a testator gave by will an annuity to each of his two daugh-ters of $6,000. After its execution he gave one daughter, absolutely, bonds sufficient to produce an annual income of $1,200, and reduced her annuity to that amount by codicil. Subsequently, he gave the other daughter the same amount of bonds, and instructed his lawyer

to alter his will so as to reduce the annuity to that amount, but, on account of his sudden death, it was never done. The court held, in spite of the different natures of the gifts, that the doctrine of ademption applied, and that the second daughter's annuity should be reduced pro tanto, even without evidence of the testator's intention.

Money advanced to a daughter during the lifetime of the testator was held to work an ademption, although the limitations of the settlements were different: Sheffield v. Coventry, 2 Russ. & M. 317; the circumstance of the limitations being different not affecting the question: Durham v. Wharton, 3 Clarke & F. 146. See, however, Phillips v. Phillips, 34 Beav. 19.

A condition attached to a gift may render it not ejusdem generis, as where money is given upon a contingency, as marriage or in case of surviving the testator; in which case it is no satisfaction of a legacy: Spinks v. Robins, 2 Atk. 491. Nor is it where the contingency is that she arrive at age: Bellasis v. Uthwatt, 1 Atk. 426.

Even though the gift is of a different species from the legacy, if it was the intention of the testator that it should be substituted for the latter, it will be adeemed: May v. May, 28 Ala. 141; Jones v. Mason, 5 Rand. 577, 16 Am. Dec. 761; Booker v. Allen, 2 Russ. & M. 270.

Who are in Loco Parentis.—As a gift to a legatee by one in loco parentis is alone presumed to be in satisfaction of the portion given by will, it becomes necessary to determine who is considered as being in that relation. The rule of ademption by advancement is not favored by law, as the intent of the testator is as often disappointed as served by it: Powel v. Cleaver, 2 Bro. C. C. 499; and being technical, is not to be extended: Watson v. Watson, 33 Beav. 574. Of course, when the bequest is made by a father to his child no difficulty arises, he standing by nature in loco parentis. The rule has been held not to apply to remote relations, such as a great uncle, where the legatee's father was alive: Shudal v. Jekyll, 2 Atk. 516. The fact that the father is alive, however, is not of controlling importance, as in Pym v. Lockyer, 5 Mylne & C. 29, the grandfather was in loco parentis, although the father of the child was living. To the same effect, see Powys v. Mansfield, 3 Mylne & C. 359.

A grandson stands to a grandfather as a stranger, for the purposes of the rule that satisfaction is to be presumed as advancement: Swails v. Swails, 98 Ind. 511, citing Ex parte Pye, 18 Ves. Jr. 140; Richardson v. Richardson, Dud. Eq. (S. C.) 184; Allen v. Allen, 13 S. C. 512, 36 Am. Rep. 716; Shudal v. Jekyll, 2 Atk. 516; Powel v. Cleaver, 1 Bro. C. C. 499; Lyddon v. Ellison, 19 Beav. 565. See contra, Clendening v. Clymer, 17 Ind. 155; Gilchrist v. Stevenson, 9 Barb. (N. Y.) 9.

At common law a man did not stand in the relation of parent to his natural child, and on that account such child was favored at the expense of legitimate offspring: Wetherby v. Dixon, 19 Ves. Jr. 407, Cooper, 279; Ex parte Pye, 18 Ves. Jr. 140. In the latter case Lord

Eldon condemned this rule, stating that it proceeded upon the artificial notion that by giving a legacy to legitimate children the father was considered as merely paying a debt of nature: See, however, In re Lowes, L. R. 20 Ch. Div. 81.

There being no obligation on the mother of a child to provide for it, as in the case of a father, she cannot be said to stand in loco parentis: Bennett v. Bennett, L. R. 10 Ch. D. 474. Nor is a legacy to the testator's housekeeper adeemed by a subsequent gift of a house, there being no evidence on the part of the testator to put himself in loco parentis to the legatee: Appeal of Sprenkle (Pa.), 15 Atl. 773.

The test is whether the circumstances taken in the aggregate amount to a moral certainty that the testator considered himself in the place of the child's father, and as meaning to discharge those natural obligations which it was the duty of the parent to perform: Gill's Estate, 1 Pars. Eq. Cas. (Pa.) 139.

The fact that the child's father is alive is not conclusive against the assumption by a stranger of the place of the parent, but it affords some inference against it: Powys v. Mansfield, 3 Mylne & C. 359. On the question as to whether he intended to assume that relation parol evidence is admissible, and the declarations of the testator allowed for that purpose: Gill's Estate, 1 Pars. Eq. Cas. (Pa.) 139; Powys v. Mansfield, 3 Mylne & C. 359; Booker v. Allen, 2 Russ. & M. 270.

The relation of parent must exist at the date of the will, or it will not be presumed as a portion: Watson v. Watson, 33 Beav. 574.

**Bequest of Residue.**—The early rule was that a bequest of the residue, or part of the residue, of an estate was not adeemed by a subsequent advancement, the reason being that such bequest was uncertain; or, as stated in Freemantle v. Banks, 5 Ves. Jr. 79, the idea of a portion is ex vi termini a definite sum; therefore a residuary bequest cannot be a portion, and if there is no portion there is no ademption by advancement: See, in accord, Davis v. Whittaker, 38 Ark. 435; Clendening v. Clymer, 17 Ind. 155; Grigsby v. Wilkinson, 9 Bush (Ky.), 91; Hays v. Hibbard, 3 Redf. (N. Y.) 28; Farnham v. Phillips, 2 Atk. 215; Smith v. Strong, 4 Bro. C. C. 493.

Later cases have refused to adopt this view, however. In Matter of Turfler's Estate, 1 Misc. Rep. 58, 23 N. Y. Supp. 135, the present view is stated as follows: "It is claimed that this principle of ademption is not applicable to a bequest of residue, but while the earlier authorities seem to have so indicated, yet the later ones hold the contrary." In Montefiore v. Guedalla, 1 De Gex, F. & J. 93, Lord Chancellor Campbell writing the opinion, at page 99: "It has been said that there cannot be an ademption where a testamentary gift is of the residue of the testator's property. This position rests upon no principle, and if strictly acted upon would produce great injustice. The doctrine of ademption has been established for the purpose of carrying into effect the intention of fathers of families in providing

for their children, and of preventing particular children from obtaining double portions, contrary to said intention. The only reason for the exception is that a residue is uncertain and may be worthless. . . . . But if a testator, after directing his executor to pay debts, funeral expenses, and legacies, goes on to say: 'And whereas, I wish all the residue of my personal property to be equally divided among my three children, I direct that each of them receive one-third of the residue,' and afterward he advances £5,000 to a daughter on her marriage, or to a son to purchase a commission in the army, can there be any doubt that he meant this sum to be deducted from the one-third of the residue coming to the daughter or the son?" Speaking of the cases to the contrary, he said: "The whole of that class of cases has been swept away by Thynne v. Glengall, 2 H. L. Cas. 131. Upon the whole, [Lord Campbell still writing] I think the question whether a gift of residue does or does not operate as an ademption or satisfaction must depend upon the intention": See, also, 2 Williams on Executors, 1442.

A daughter's share of the residue was held adeemed by advancements made upon her marriage in Beckton v. Barton, 27 Beav. 99; Stevenson v. Masson, L. R. 17 Eq. 78. And see In re Vickers, L. R. 37 Ch. D. 525, in which case a bequest of the residue was held adeemed by advancements to sons in business.

In Meinertzagen v. Walters, L. R. 7 Ch. 670, a testator directed his trustees to pay the income of one-half of the residue to his widow for life, and to divide the other half between his children in equal shares, as tenants in common. After the date of the will, the testator made advances to some of his children. It was held that such advances could only be brought into account for the benefit of the children among themselves, and that the widow was not entitled to have her income increased by having the advances brought into account in estimating the residue. In his opinion, Mellish, L. J., said: "If the rule is, that we are to carry out what the testator intends, it is clear that when he makes a gift in his lifetime, as in this case, he does not intend to take away from the residue which he has given to a stranger. It cannot possibly be disputed that if the testator had given to his widow a life interest in the whole of the residue, the fact of making a gift in his lifetime to a child, just as to anybody else, must have had the effect of diminishing that residue; and it certainly appears to me contrary to reason to hold that if, instead of having given his wife a life interest in the whole residue, he gives her a life interest in the half, and then makes presents to children, she is in that case to have a life interest in that which he meant the child to enjoy immediately."

Time When Advancement Made.—It is recognized as the law in all of the states and in England that a legacy is not adeemed by an advancement made prior to the execution of the will bestowing the legacy: Chapman v. Allen, 56 Conn. 152, 14 Atl. 780; In re Lyon's Estate, 70 Iowa, 375, 30 N. W. 642; Jacques v. Swasey, 153 Mass.

596, 27 N. E. 771; Matter of Crawford, 113 N. Y. 560, 21 N. E. 692; Zeiter v. Zeiter, 4 Watts (Pa.), 212, 28 Am. Dec. 698; Taylor v. Cartwright, L. R. 14 Eq. 167. It will, of course, operate as an ademption if the testator charges it in his will against the legatee: Kreider v. Boyer, 10 Watts (Pa.), 54; Strother v. Mitchell, 80 Va. 149; and in Upton v. Prince, Cas. t. Talb. 17, a father advanced some of his children with portions during his lifetime, and then made a will, in which he recited that he had advanced two of the children, but omitted to recite the third, whom he had also advanced, and left him a certain sum, and devised the residue equally among them; it was held that the money advanced to the third son should go in satisfaction of the legacy.

Where a grandfather made provision for the marriage of his grandson, which he did not fulfill to the letter, but made a larger and more beneficial one by will, the latter is a substitution for the former, and excludes the idea of a double portion: Waters v. Howard, 8 Gill, 262.

In Robbins v. Swain (Ind.), 32 N. E. 792, an advance was made by an aunt to one of her nieces, who gave her a receipt, prior to the execution of the will, acknowledging the sum as part of the bequest. It was held that this was an ademption pro tanto of the legacy, as the testatrix intended by her will to· make her bounty to this and another niece equal, and although the receipt was not mentioned in the will.

Devises of Real Estate.—The doctrine of ademption has no application to devises of real estate, acting only upon personalty bequeathed by will: Marshall v. Rench, 3 Del. Ch. 239; Weston v. Johnson, 48 Ind. 1; Swails v. Swails, 98 Ind. 511; Allen v. Allen, 13 S. C. 512, 36 Am. Rep. 716; Clark v. Jetton, 5 Sneed (Tenn.), 229. The reason for this is well expressed in Fisher v. Keithley, 142 Mo. 244, 64 Am. St. Rep. 560, 43 S. W. 650, in the following language: "A conveyance by the testator, during his lifetime, of the land previously devised, operates as a revocation of the devise. This results from necessity on account of a failure of the subject of the devise. It cannot be regarded either as ademption or as an exception to the statutory mode of revocation. In neither case is it intended by the courts to set aside the statute or to defeat its provisions. Real estate is known and transferred by its description, and in case specific land is devised, a subsequent conveyance of other land does not take the devised land out of the will, and cannot effect an ademption of the devise without violating the letter and spirit of the statute. The statute was supposed to subserve a salutary pur-- pose, and should not be disregarded by the courts, even to carry out the intention of the testator, and to accomplish a more equitable division of his property among his children." See, also, Davys v. Boucher, 3 Younge & C. 397, which holds that to allow ademption in such cases would be virtually repealing that section of the statute of frauds relating to the revocation of wills of real estate.

An exceedingly strong case in this connection is Burnham v. Comfort, 108 N. Y. 535, 2 Am. St. Rep. 462, 15 N. E. 710. There a testator, by will, devised certain land to his daughter. After its execution, in consideration of a sum of money, she signed a written instrument which stated that the sum so received was in lieu of her share of her father's estate; and it was intended to be in satisfaction of the devise. The testator never altered his will, and died fifteen years after. It was held that the daughter was entitled to recover the land devised, the writing not working a revocation, which could only be done by alienation of the land by the testator, or by complying with the statute.

The Virginia court, however, has held a contrary doctrine, and in Hansbrough v. Hooe, 12 Leigh (Va.), 316, 37 Am. Dec. 659, a devise of land was considered adeemed by a gift of other land.

**Pro Tanto Ademption.**—In an old English case—Hartop v. Whitmore, 1 P. Wms. 681—it is laid down as the law that where, by will, a daughter is given £500, and afterward on her marriage, the testator gives her £300 for her portion, this is a revocation of the bequest.

The law now is otherwise, and in such a case where ademption occurs, it is pro tanto only, and not absolute: New Albany Trust Co. v. Powell (Ind. App.), 64 N. E. 640; Brady v. Brady, 78 Md. 461, 28 Atl. 515; Hoitt v. Hoitt, 63 N. H. 475, 56 Am. Rep. 530, 3 Atl. 604; Richardson v. Richardson, Dud. Eq. (S. C.) 184; Thellusson v. Woodford, 4 Madd. 420; Pym v. Lockyer, 5 Mylne & G. 29; Dawson v. Dawson, L. R. 4 Eq. 504; Nevin v. Drysdale, L. R. 4 Eq. 517.

So where land is conveyed or sold, which has been devised, this operates as a revocation only as to the portion transferred: Carter v. Thomas, 4 Me. 341; Emory v. Union Soc., 79 Me. 334, 9 Atl. 891; Hawes v. Humphrey, 9 Pick. (Mass.) 350, 20 Am. Dec. 481; Webster v. Webster, 105 Mass. 538. And where a testator undertakes to dispose of real and personal property, and subsequently conveys the real estate, this does not revoke the will as to the personalty, but only pro tanto, as to the amount actually alienated: Warren v. Taylor, 56 Iowa, 182, 9 N. W. 128.

**Burden of Proof.**—The doctrine of ademption by advanced portions proceeds entirely along the lines of the intention of the testator. In the case of his child, it is presumed to be in satisfaction of the legacy, and the burden is upon the child to show that such was not the testator's intention, and if this is done, no ademption occurs. So where a gift has been made to a stranger, although not presumed as a satisfaction, it may be shown to have been really so intended, but the burden is on the person asserting it: Carmichael v. Lathrop, 108 Mich. 473, 66 N. W. 350.

**Admissibility of Parol Evidence.**—To repel this presumption, it is now well settled that parol evidence is admissible. "The object of such proof is not to change the will, or to give the language employed a meaning different from that which it ordinarily and appro-

priately has, but merely to show that the testator has not executed or satisfied some bequest contained in it, in whole or in part. The proof, in other words, does not alter, add to, or change the will, but is admitted to show with what intent the subsequent portion, gift, or advancement was made": May v. May, 28 Ala. 141. This is borne out by the following authorities: Johnson v. Belden, 20 Conn. 322; Rogers v. French, 19 Ga. 316; Richardson v. Eveland, 126 Ill. 37, 18 N. E. 308; Timberlake v. Parish, 5 Dana (Ky.), 345; Matter of Townsend, 5 Dem. (N. Y.) 147; Degraaf v. Teerpenning, 52 How. Pr. (N. Y.) 313; Langdon v. Astor, 16 N. Y. 9, 3 Duer, 477; Gill's Estate, 1 Pars. Eq. Cas. (Pa.) 139; Biggleston v. Grubb, 2 Atk. 48; Shudal v. Jekyll, 2 Atk. 516; Kirk v. Eddowes, 3 Hare, 509; Ellison v. Cookson, 1 Ves. Jr. 100.

If the presumption against double portions is attempted to be rebutted by parol, it may be supported by evidence of the same character: Miner v. Atherton, 35 Pa. 528; Powys v. Mansfield, 3 Mylne & C. 359. In such a case equity raises the presumption against double portions, and parol evidence is admitted merely to confirm the presumption already raised: Sims v. Sims, 10 N. J. Eq. 158.

In Wallace v. Du Boise, 65 Md. 153, 4 Atl. 402, parol evidence was held admissible where the money was advanced by a father under such circumstances as not to raise the presumption of satisfaction, to show that such was really his intention.

**Strength of the Presumption.**—Advancements to children are presumed to be in satisfaction of legacies, and this presumption is not rebutted by slight circumstances: Hinchcliffe v. Hinchcliffe, 3 Ves. Jr. 516. So where there is a slight difference between the gift and the legacy as to the time of payment, it will not prevail against the presumption of satisfaction: Barclay v. Wainwright, 3 Ves. Jr. 462; Hartopp v. Hartopp, 17 Ves. Jr. 184. A contrary view is held in Van Houten v. Post, 32 N. J. Eq. 709, 33 N. J. Eq. 344, holding that the presumption is slight, and citing in support Rosewell v. Bennet, 3 Atk. 77; Kirk v. Eddowes, 3 Hare, 509.

As to the strength of the presumption, the court in May v. May, 28 Ala. 141, said: "Had the amounts advanced been inconsiderable, the presumption that the provisions were cumulative and intended so to operate, would have been much less stringent. But when the provision amounts to as much, or more, or approximates very nearly the amount to which the child would be entitled under an equal distribution as provided for in the will, the presumption becomes very strong that the father was executing his will, in part at least, and under such circumstances, the law requires very clear and satisfactory proof that it was intended by the father to give the children thus advanced double portions." As to the occasion of making the gift, and its influence upon the presumption, see Robinson v. Whitley, 9 Ves. Jr. 577.

**Intention of Testator.**—The intention of the testator being the essence of ademption by advancement, the assent of the legatee is

not necessary: Cowles v. Cowles, 56 Conn. 240, 13 Atl. 414. In Georgia a legacy may be adeemed by delivery of property to the legatee during the testator's lifetime, but the delivery must be of such a character as to show it was the testator's intention to part at that time irrevocably with dominion over the property; and ademption is a question of fact for the jury: Clayton v. Akin, 38 Ga. 320, 95 Am. Dec. 393.

A Kentucky statute provides that a provision for or advancement to, any person, whether child or stranger, shall be deemed a satisfaction in whole or in part of a devise or bequest contained in the will, in all cases in which it shall appear from parol or other evidence to have been so intended. Under this statute, one claiming an advancement to be in satisfaction of a legacy must aver that such was the intention of the testator: Swinebroad v. Bright, 23 Ky. Law Rep. 55, 62 S. W. 484.

Testator's Books of Account as Evidence.—The books of account of a testator, wherein certain sums are directed to be taken from a child's portion, as bequeathed by will, are not evidence per se. The fact of advancement must be proved by evidence aliunde, which taken in connection with the books would prove the fact: Benjamin v. Dimmick, 4 Redf. (N. Y.) 7; Lawrence v. Lindsay, 68 N. Y. 108; Marsh v. Brown, 18 Hun, 319.

Specific Legacies—Testator's Intention.—The class of legacies thus far discussed are those known as general or pecuniary. We now come to another class, as to the ademption of which some conflict and confusion has arisen—specific legacies, which are, as the name implies, bequests of certain, definite objects: Hood v. Haden, 82 Va. 588.

One line of cases holds that the ademption of a specific legacy does not depend upon the intention of the testator, the sole test being, Does the thing bequeathed remain in specie at the time of the testator's death? If it does not, it is adeemed: Richards v. Humphreys, 15 Pick. (Mass.) 133; Beck v. McGillis, 9 Barb. (N. Y.) 35; Hoke v. Hermann, 21 Pa. 301; Stanley v. Potter, 2 Cox, 180; Humphreys v. Humphreys, 2 Cox, 184.

The doctrine of these cases is repudiated and criticised in Beall v. Blake, 16 Ga. 119, in the following strong language: "A testator's intention, if that is not illegal, is the law to his will. To this rule there is no exception of which I am aware. And yet I am aware, that in 1786, Lord Thurlow, as chancellor, in the case of Ashburner v. Macguire, commenced the making of an exception to it, and that in the course of a short time afterward in the cases of Badrick v. Stevens, 3 Bro. C. C. 431, Stanley v. Potter, 2 Cox, 180, and Humphries v. Humphries, 2 Cox, 184, he completed the work, as far as in him it lay to complete it.

"In the last of these cases, he makes the announcement, 'that he was satisfied, from the consideration he had given to the cases on a former occasion, that the only rule to be adhered to, was to as-

certain whether the subject of the specific bequest remained in specie at the death of the testator; and if it did not, that then there must be an end of the bequest; that the idea of discussing what might be the particular motives and intentions of the testator, in each case, in destroying the subject of the bequest, would be productive of endless uncertainty and confusion': Roper on Legacies, 244.

"Now a thing cannot be said to 'remain in specie' a testator's, at the time of his death, if before that time he has sold it or otherwise parted with it, or if the thing has perished, or if it was never his, but was always another's, although he thought it to be his when he bequeathed it. Lord Thurlow's announcement comes, therefore, to this: That if a testator, after making his will, has sold the thing which constitutes a specific bequest, or has otherwise parted with it; or if the thing has itself perished; or if it was never his to bequeath, but was always another's, although he thought it his—in any of these cases, the specific bequest is adeemed—is so completely adeemed, that if the case be that the thing given has perished, there can be no replacement of it by an equivalent, in money or other thing; or if the case be that the thing bequeathed has ceased to belong, or has never belonged to the testator, there can be made, by the executor with the true owner, no arrangement by which to render the thing subject to the bequest, no odds how manifest it may be in the will that the testator intended such replacement, or arrangement, whichever it might be, that the case should require. . . . .

"The upshot of this innovation of Lord Thurlow was a state of evil so intolerable that parliament had, at length, to interpose with a statute for its suppression. This parliament did, by Statute 1 Victoria, chapter 26, section 23, which enacts, 'that no conveyance, or other act, made or done subsequently to the execution of a will of or relating to any real or personal estate therein comprised, except an act by which such will shall be revoked, as aforesaid, shall prevent the operation of the will, with respect to such estate, or interest in such real or personal estate, as the testator shall have power to dispose of by will, at the time of his death.' And section 24, which enacts 'that every will shall be construed with reference to the real estate, and personal estate comprised in it, to speak and take effect as if it had been executed immediately before the death of the testator, unless a contrary intention shall appear in the will.'

"The effect of these enactments must be, in a great measure, if not altogether, to suppress Lord Thurlow's innovation, and to make the old rule its pristine breadth—to make it a rule without exception—the old rule, that the testator's intention gives law to his will."

**Bequest of Debt.**—The bequest of a debt is a specific legacy, and payment to the testator during his lifetime works an adèmption thereof: Succession of Batchelor, 48 La. Ann. 278, 19 South. 233;

Badrick v. Stevens, 3 Bro. C. C. 431; Fryer v. Morris, 9 Ves. Jr. 360; Pawlet's Case, Ld. Raym. 335; Manton v. Tabois, L. R. 30 Ch. D. 92. So where a husband gives and bequeaths to his wife "all moneys and interest that may be recovered of and from Dr. K., for the purchase of the Penrose estate," and he receives the money therefor in his lifetime, the specific debt is adeemed: Gilbreath v. Alban, 10 Ohio, 64. So a legacy given to satisfy a debt due a legatee from a third person is in the nature of a specific legacy, and payment by the testator in his lifetime works an ademption: Tanton v. Keller, 167 Ill. 129, 47 N. E. 376, affirming 61 Ill. App. 625. See, also, Taylor v. Tolen, 38 N. J. Eq. 91.

A distinction was formerly made in the case of a bequest of a debt, between when it was voluntarily paid, and when paid by compulsion. In the former case it was held not to work an ademption, as the act was not that of the testator, and he could not help receiving the amount; while in the latter case the act was his own, and showed an intention on his part to treat the legacy as at an end: Stout v. Hart, 7 N. J. L. 414; Lawson v. Stitch, 1 Atk. 507; Crockat v. Crockat, 2 P. Wms. 164; Rider v. Wager, 2 P. Wms. 328; Drinkwater v. Falconer, 2 Ves. 623; the distinction being borrowed from the civil law: Birch v. Baker, Mosely, 373.

This distinction is at present not recognized, and ademption is held to have taken place when the debt was paid, regardless of whether done voluntarily or under compulsion: Wyckoff v. Perrine, 37 N. J. Eq. 118; Ashburner v. Macguire, 2 Bro. C. C. 108, 2 White & Tudor Lead. Cas., pt. 1, p. 246.

A debt may be made the subject of an advancement the same as a gift of money. So where by will a testator, after reciting that his son owed him a certain sum, due on notes, released him from the payment of interest up to the time of his death. Some years later he made a codicil, not referring to said release. At the date of the will the son owed the testator £1,400, and between the date of its execution and that of the codicil that sum was paid off, and a subsequent advance of £1,200 was made to the son, which was owing at the testator's death. It was held that the release of interest was equivalent to a specific legacy of the interest on the debt due when the will was made, and that it had been adeemed, not extending beyond the date of the will: Sidney v. Sidney, L. R. 17 Eq. 65. See, also, Davis v. Close, 104 Iowa, 261, 73 N. W. 600.

The declarations of a parent, made after debts have been contracted, of an intention to treat them as advancement, are not admissible, such declarations not being communicated to the child, nor accompanied by an act sufficient to obliterate the obligations as debts: Yundt's Appeal, 13 Pa. 575, 53 Am. Dec. 496.

Where the proceeds of a debt, and not the debt itself, given by will, are paid during the life of the testator, no ademption occurs. In Coleman v. Coleman, 2 Ves. Jr. 639, the testator gave the interest of a certain bill of exchange to his wife for life, and directed that

after her death the bill should be sold and the money divided among certain persons; the bill was paid before the testator's death, and was held not adeemed thereby. So where "an amount of money" that might accrue from a certain claim was bequeathed, and subsequently paid, under order of court, the money being invested in consols, which were treated as subjects of the legacy, ademption was held not to have occurred, the court saying: "The strict construction of the testator's language makes it not a gift of the debt qua debt, but of the sum of money produced when the debt was recovered and ceased to exist as a debt. This goes to show that the testator contemplated the recovery of the debt in his own lifetime, when the subject of the gift could not be the debt itself, but the amount recovered in respect of it": Clark v. Browne, 2 Smale & G. 524.

Where a legacy of £2,000 was devised, which was made up of debts due the testator and mentioned in a schedule annexed to the will, but in fact they amounted only to £1,700, it was held that the devisee was entitled to the full £2,000: Pettiward v. Pettiward, Rep. T. Finch, 152.

Stocks, Shares and Bonds.—Stocks and bonds are the common subjects of bequests, and difficulty has arisen in the application of the doctrine to them. The sale of stock specifically bequeathed, the same as the sale of any chattel, works an ademption, and the difficulty lies in determining whether the legacy is specific. Where a testator leaves the income of a certain number of shares, which is the exact number he owns at the time, and subsequently sells them, the legacy is specific and adeemed: White v. Winchester, 6 Pick. (Mass.) 48. So where "my £1,000 East India stock" was left by will, it was held specific and adeemed by sale thereof: Ashburner v. Macguire, 2 Bro. C. C. 108, 2 White & Tudor Lead. Cas., pt. 1, p. 246. See, also, Douglass v. Douglass, 13 App. D. C. 21; Harvard Unitarian Soc. v. Tufts, 151 Mass. 76, 23 N. E. 1006; Blackstone v. Blackstone, 3 Watts (Pa.), 335, 27 Am. Dec. 359.

In Hosea v. Skinner, 32 Misc. Rep. 653, 67 N. Y. Supp. 527, the testator left shares or the proceeds thereof "when realized as same would have been to me." Before his death they were sold and the proceeds invested in shares of another company. It was held that the legacy was specific and adeemed, and the legatee not entitled to the other shares. In Matter of Andrew's Estate, 25 Misc. Rep. 72, 54 N. Y. Supp. 708, shares or "the proceeds thereof when realized" were bequeathed, and sale of them by the testator was held no ademption, and the legatee entitled to the proceeds.

The sale of stock specifically bequeathed, then, working an ademption, stock subsequently purchased by the testator does not pass to the specific legatee: Harrison y. Jackson, L. R. 7 Ch. D. 339; Macdonald v. Irvine, L. R. 8 Ch. D. 101. In Pattison v. Pattison, 1 Mylne & K. 12, a testator bequeathed certain annuities, sold them and bought others, different only in that they terminated a quarter

of a year sooner. The court held that the specific thing bequeathed not existing at his death, it was adeemed.

Ademption by Exchange, Investment and Conversion.—The same rule applies where it is exchanged for, or converted into, other security. So where a testator bequeathed debentures in a certain company, and subsequently converted them into debenture stock of the same company, the latter did not pass by will: In re Lane, L. R. 14 Ch. D. 856.

Slight and immaterial changes in form of the security do not work an ademption: In re Frahm's Estate (Iowa), 94 N. W. 444; as where the stock is vested in trustees for the use of a person, who afterward takes it into her own name: Dingwell v. Askew, 1 Cox, 427. Where stock in an insurance company was left, which company lost its capital stock in the course of business, after the making of the will, and on its stock being filled again, the testator paid up part only of his shares and retained them till his death, the legacy was held not to be adeemed as to such part of the stock: Havens v. Havens, 1 Sand. Ch. (N. Y.) 324.

In Re Peirce, 25 R. I. 34, 54 Atl. 588, a testatrix bequeathed shares of stock in a bank, which subsequently during her lifetime consolidated with other banks, the new concern taking over the liabilities and assets of the several banks without a formal liquidation, and their stockholders were allowed to exchange their shares for shares in the consolidated bank. No ademption was held to have occurred, although the testatrix had to make a small additional payment: See, also, In re Pitkington's Trusts, 6 N. R. 246.

An exception to the rule exists where the alteration in the stock is brought about by an act of law. So where stock bequeathed is subsequently turned into annuities by act of parliament, it is not adeemed: Bronsdon v. Winter, 9 Amb. 56; nor does the conversion of a state bank into a national bank, under an act of Congress, adeem the stock: Maynard v. Mechanics' Nat. Bank, 1 Brewst. (Pa.) 483. See in this connection Walton v. Walton, 7 Johns. Ch. (N. Y.) 258, 11 Am. Dec. 456, and Partridge v. Partridge, Cas. t. Talb. 226.

In Oakes v. Oakes, 9 Hare, 666, a bequest was made of all the testator's Great Western Railway shares, and all other railway shares of which he might be possessed at the time of his death; this was held to pass the Great Western Railway shares which he had at the date of his will, and which were afterward converted into consolidated stock, by resolution of the company, made under authority of an act of parliament; but not to pass the consolidated stock purchased by the testator after the date of the will, share and stock being two different things.

When the stock bequeathed is sold, the legacy is adeemed, even though similar shares be in the testator's possession at the time of his death. So where, being possessed of £1,000 guaranteed stock in the N. B. railway, a testator left to a legatee "my one thousand N. B. preference shares," and afterward sold them, and died possessed

of shares in the N. B. railway, acquired by several successive purchases, exceeding the amount bequeathed, it was held to be adeemed: In re Gibson, L. R. 2 Eq. 669. The court there said: "In this case the testator, at the time of his death, had not this specific stock in any shape. He had parted with it, and acquired by subsequent purchase a much larger number of shares. These subsequent purchases were not in any shape a replacing of the original fund, and there is nothing to lead the court to suppose that, having once adeemed the specific bequest, the testator has replaced the identical thing. He has distinctly referred to one thing in his will, which was no longer in existence at the time of his death. That thing, and that only, can be considered as the subject of the bequest."

In Partridge v. Partridge, Cas. t. Talb. 226, one devised to another £1,000 capital South Sea stock; at the time of making his will he had £1,800 such stock, which afterward, by sale, he reduced to £200, subsequently increasing it to £1,600, which amount he had when he died. In his opinion the lord chancellor said: "All cases of ademption of legacies arise from a supposed alteration of the intention of the testator; and if the selling out of the stock is an evidence to presume an alteration of such intention, surely his buying in again is as strong an evidence of his intention that the legatee should have it again. . . . . It would be very hard in the case at bar to consider the selling as an ademption, because he might sell out for some particular purpose, and as soon as that purpose was answered he might buy in again."

The investment of proceeds unauthorized by the testator has been held not to work an ademption: Busan v. Brandon, 8 Sim. 171. The facts in that case were as follows: A resident of Jamaica bequeathed to a legatee £2,000, part of £7,000 in the hands of his agents in England. He afterward went to Philadelphia, where he died. A week before his death he wrote to his agent in Jamaica, requesting him to order his agents in England to invest all of the above-mentioned sum in any stock most beneficial to his estate. The agent wrote accordingly, but before the arrival of his letter in England, the agents there had voluntarily invested the whole of the testator's moneys in their hands in certain securities. No ademption resulted, the court saying: "A mere unexecuted intention to change the state of a fund, which the testator might have revoked, and which, in fact, was never carried into execution, cannot, in any sense, be considered as an ademption."

A testator, after bequeathing specific stock, was found a lunatic, and under an order in lunacy the stock was sold and the proceeds invested in consols. The court held the first stock adeemed, and the consols went into the residue of the estate: In re Freer, L. R. 22 Ch. D. 622; Jones v. Green, L. R. 5 Eq. 555. In Jenkins v. Jones, L. R. 2 Eq. 323, however, after the testator had become insane, the specific legatee, with the concurrence of the executrix, put the money derived from the sale of the shares in a bank, in the names of

themselves and a third person, where it remained till the testator's death; and it was held not to be adeemed.

Mortgages.—Like a debt, a mortgage may be specifically bequeathed, and the same rule in regard to its being in esse as a mortgage applies. In Abernethy v. Catlin, 2 Dem. (N. Y.) 341, a testator gave his executors, by will, a certain bond and mortgage for $7,000, the amount of principal due, held against a certain person, to convert into money on a fixed occasion, and divided the proceeds. The principal had originally been $10,000, the unpaid balance being due at the execution of the will. That balance was afterward paid the testator, who deposited it in a bank, where it remained. This was held a specific legacy, and adeemed by payment. Two important New York cases were discussed, as follows: "In Gardner v. Printup, 2 Barb. 83, the supreme court of this state had under consideration a case closely resembling the present. A testator bequeathed 'the proceeds of a bond and mortgage,' which he described. In his lifetime he commenced proceedings for the collection of the amount due on the bond. This led to a sale of the mortgaged premises. The testator was paid a certain sum in cash, and took from the purchaser a bond which he indorsed as payment on the original mortgage. It was held that, under these circumstances, the legacy was extinguished.

"The question of ademption came again before the supreme court in the case of Beck v. McGillis, 9 Barb. 35. A testator had executed a will bequeathing a certain mortgage which he had afterward foreclosed. He had taken from the purchaser a new mortgage upon the same premises. It was held that the foreclosure had destroyed the legacy, and that, too, in spite of the fact that, after the decease of the testator, there was found among his papers a memorandum in his own handwriting declaring that he intended the new mortgage to take the place of the old, and to pass under his will as the other would have done if it had remained unextinguished at his death."

In Gardner v. Hatton, 6 Sim. 93, £7,000 secured on mortgage was bequeathed; after the will was made, that sum was received by the testator, and £6,000 of it immediately invested on another mortgage, the other £1,000 being deposited in a bank. The legacy was held to be specific and adeemed. Where a will directed that the proceeds of a certain mortgage owned by the testatrix should be used to pay an existing mortgage against the estate, but which was paid to her before her death, and the proceeds invested in certain railroad bonds, it was held that, as the bonds were traceable to the immediate proceeds of the mortgage, they were the proceeds thereof within the meaning of the will: Hopkins v. Gouraud, 23 N. Y. Supp. 189.

Where a will directed the amount of a certain bond to be collected after the death of the decedent's wife, and divided among certain legatees, and afterward the testator took from the obligors an as-

signment of another bond and mortgage of equal amount, in place of the first bond, and it was not paid at his death, the court held the legacies general and not adeemed: Doughty v. Stillwell, 1 Bradf. (N. Y.) 300.

For a case in which the mortgages bequeathed were held not to be adeemed by the mere transfer to a different name, they remaining in specie at the testatrix's death, see In re Tillinghast, 23 R. I. 121, 49 Atl. 634.

Insurance Policies.—Policies of life insurance rest on the same ground as instruments bequeathed, and where paid during the testator's lifetime do not pass: Barker v. Rayner, 5 Madd. 208, on appeal, 2 Russ. 124. Where specific chattels bequeathed were insured and lost at sea, the legatee was held to have no claim upon the insurance money, being different from what was by will left: Durrant v. Friend, 5 De Gex & S. 343.

Articles of Partnership.—A partner by will gave part of the profits reserved to him to his partner. Afterward, at the expiration of the partnership, he renewed it with the same men, giving them a greater interest than they had under the former articles. It was held that the renewal of the partnership did not work an ademption: Blackwell v. Child, Amb. 260.

Ademption by Acquisition.—Ademption in the case of specific legacies arises generally in one of two modes, alienation and acquisition.

Acquisition occurs where the thing bequeathed is not the testator's when the will is made, but subsequently becomes his; and has been more fully discussed under the preceding subdivision of debts, etc., in detail. Ademption by acquisition applies only to specific legacies: In re Bradley's Will, 73 Vt. 253, 50 Atl. 1072.

Ademption by Alienation.—Alienation is, perhaps, the most common cause of ademption. As where a slave is bequeathed and is sold during the lifetime of the testator, ademption occurs, there being nothing for the bequest to act upon: Godard v. Wagner, 2 Strob. Eq. (S. C.) 1. It was held in Blakemore's Succession, 43 La. Ann. 845, 9 South. 496, that the sale of property bequeathed does not revoke a legacy of it, when clearly proved that such was not the intent of the testator, as in the case of a simulated transfer acknowledged by the vendee, the property returning to the testator, and being in esse at his death.

The strict common-law rule as to the alienation of the subject of a specific legacy was changed in Kentucky by statute, which enacts that: "The conversion, in whole or in part, of money or property, or the proceeds of property devised to one of the testator's heirs into other property or thing, with or without the assent of the testator, shall not be an ademption of the legacy or devise unless the testator so intended; but the devisees shall have and receive the value of such devise unless a contrary intention on the part of the

testator appear from the will, or by parol or other evidence": Schaefer v. Voght's Trustee, 23 Ky. Law Rep. 2291, 67 S. W. 54; Miller v. Malone, 109 Ky. 133, 58 S. W. 708. This statute applies only where the devisee is an heir of the testator: Franck v. Franck, 24 Ky. Law Rep. 1790, 72 S. W. 275. See Patton v. Patton, 2 Jones Eq. (N. C.) 494, for a case in which the property was sold, without the knowledge of the testator, and the legacy was held not adeemed.

If the real property devised is sold, the money received cannot be substituted for the land, it becoming personalty, and the devisee has no claim upon the fund: Philson v. Moore, 23 Hun (N. Y.), 152. So a conveyance in fee simple of a lot is a revocation as to it, and the rent reserved to the grantor therefrom does not pass to the devisee: Skerrett v. Burd, 1 Whart. (Pa.) 246. And where a testator devised all his real estate to his wife, for life, to be sold after her death and the proceeds divided among his nephews and nieces, and he subsequently sold a portion of the land, taking a mortgage for part of the purchase money, this operated as a revocation of the devise, and the nephews and nieces took no interest in the purchase money mortgage, that going to the residuary legatee: McNaughton v. McNaughton, 34 N. Y. 201.

Generally, where an option is given and not exercised till after the death of the testator, the proceeds are treated as personalty: Lawes v. Bennett, 1 Cox, 167, 1 R. P. 10. Where the intention, however, is otherwise manifested, a different rule prevails: In re Pyle, 13 Rep. 396. In that case the decedent devised real estate, subsequently made a codicil confirming the will, and on the same day executed a lease of the realty, giving the lessee an option to purchase, which was exercised after the testator's death. This was held a sufficient indication of intention that the money should go the same way as the land, and that the specific legatee was entitled to it.

Where the property was sold, and the will provided for sale thereof, and distribution of the proceeds, and no ademption occurred, see Connecticut Trust etc. Co. v. Chase (Conn.), 55 Atl. 171.

Where the real estate is sold under condemnation proceedings, the proceeds thereof become personal property, the same as in the case of a voluntary sale, and the devisee is not entitled thereto: Ametrano v. Downs, 170 N. Y. 388, 88 Am. St. Rep. 671, 63 N. E. 340, affirming 62 App. Div. 405, 70 N. Y. S. 833.

As to the appointment of a power working an ademption, see Gale v. Gale, 21 Beav. 349; In re Dowsett (1901), 1 Ch. 398, 70 L. J. Ch. 149.

Bequest of Proceeds.—Where the proceeds of a bond and mortgage are specifically given, it is a specific legacy; but not where a certain sum, to be paid out of the proceeds of a bond and mortgage, is given. So if the legacy is specific, the proceeds must exist in some form at the testator's death, and when any part of them has become used in the payment of debts or otherwise, so as to have lost their sepa-

rate identity, ademption pro tanto occurs: Gardner v. Printup, 2 Barb. (N. Y.) 83.

In Nooe v. Vannoy, 59 N. C. (6 Jones Eq.) 185, the court said: "As the proceeds of the sale of the property are given, it follows that if such a part thereof as is specified can be traced out and identified, at the time of the death of the testator, the legacy will take effect, and there will be no ademption, or only a partial one. The distinction between the gift of the property itself and a gift of the value of the property, or the proceeds of the sale of property is well settled: Pulsford v. Hunter, 3 Bro. C. C. 416; 1 Roper on Legacies, 246, where it is said: 'The last class of cases to be noticed as not falling within the general rule of ademption is where the terms of the bequest are so comprehensive as to include within their compass the fund specifically bequeathed, although it has undergone considerable alteration.' He illustrates the exception by supposing the value of certain notes and cash in the hands of B., to be given to C., and afterward the testator changes the notes and cash, by an investment, into exchequer bills, bonds or mortgages, which are placed in the hands of B., the exchequer bills, bonds or mortgages will pass, because they answer the specification of the fund in the will." See the distinction made between this case and Starbuck v. Starbuck, 93 N. C. 183, where the money was given and subsequently reinvested.

**Change in Subject of Bequest.**—An essential change in the thing specifically bequeathed works an ademption, and it therefore becomes necessary to determine what is an essential change.

Where notes, secured by mortgage, were bequeathed, which notes the testator surrendered, and took a reconveyance of the property for which they were given; and afterward sold the same property to another and took notes for it that were unpaid when he died, the legacy was held adeemed on account of the change: Tolman v. Tolman, 85 Me. 317, 27 Atl. 184. But where a testator, after bequeathing by will a certain claim against his debtor, exchanges with the latter the original evidence of his debt for his bond, the legacy is not revoked by implication under the Louisiana statute, the only modification being in the form of the evidence, the obligation remaining: Irwin's Succession, 33 La. Ann. 63. So where notes bequeathed were signed by two persons, one of whom the testator, before his death, released, and took new notes for the debt from the other, signed, secured by mortgage, no ademption resulted: Ford v. Ford, 23 N. H. 212.

**Change as to Deposit in Bank.**—In Prendergast v. Walsh, 58 N. J. Eq. 149, 42 Atl. 1049, a testatrix by will gave her money in certain banks to her sisters; before her death she drew it out and deposited it in another, where it remained till her decease. Although a specific legacy, the court held it not to have been adeemed, saying: "It is undoubtedly true that a general deposit in a bank creates a debt from the bank to the depositor. The bank is not bound to preserve the

money in specie, and it can be paid by the delivery of any money of equal amount. It is also true that a testamentary gift of a debt due to the testator is adeemed, if the debt is paid to the testator during his life. But it seems to me that, while such a deposit creates a debt, yet the gift of the amount of such deposit, as money or cash, differs from the gifts of an ordinary debt. It will pass by a gift of all the testator's ready money or cash." Sir Lancelot Shadwell, in the case of Parker v. Marchant, 1 Younge & C. C. 290-307, affirmed by Lord Chancellor Lyndhurst on appeal (1 Phill. Ch. 356), said: "Undoubtedly, an ordinary balance in the banker's hands is, in a sense, a debt due from him. Certainly, he may be sued for the debt. But it may be equally true that, in a sense, it is ready money. . . . . The term 'debt,' however correct, is not colloquially or familiarly applied to the balance at a banking-house. No man talks of his banker being in debt to him. Men, speaking of such a subject, say that they have so much in their banker's hands. A mode of expression indicating virtual possession, rather than a right to which the law applies the term 'chose in action.' . . . . In the present case the intention of the testatrix was not to give a mere thing in action. What she gave was the money in the banks—using the words in their popular sense. It is true that the money did not exist in specie, and would not again be delivered to her or her personal representatives in specie; yet, having put money there, which was still there as money, liable to be drawn as money, so she designated it as money. The thing she bequeathed she drew from the bank. It remained the identical thing bequeathed until disposed of in some way by her. . . . . If the money remained practically the same money, then the removal of it from the place of its deposit did not amount to an ademption. The place of deposit was merely used as descriptive of the thing bequeathed." But see Bell's Estate, 8 Pa. Co. Ct. Rep. 454.

**Change as to Place or Locality.**—Some confusion has arisen among the authorities as to the effect of removing goods bequeathed as at a particular place. Where the place is merely descriptive, removal to another location is immaterial: In re Tillinghast, 23 R. I. 121, 49 Atl. 634; Cunningham v. Ross, 2 Cas. t. Lee, 272. The difficulty arises in determining whether the place, in each particular instance, is descriptive. In Norris v. Norris, 2 Coll. 719, 10 Jur. 629, there was a bequest of furniture in a certain house; subsequently the testator moved, took that furniture with him, and bought more. It was held that the bequest was not adeemed, being a general gift. So where a testator gave all his plate and linen in his house at S. to his wife, he having but one set of plate and linen, which was usually removed with the family from house to house, and at the time of his death it happened to be at B., the country house, it was held to pass to his wife: Land v. Devaynes, 4 Bro. C. C. 537.

In Houlding v. Cross, 1 Jur., N. S., 250, a testator bequeathed all the furniture which should be in a certain house at his death, in

which he lived when the will was made; subsequently he moved, taking the furniture with him, and it was held to be adeemed: See to the same effect, Blagrove v. Coore, 27 Beav. 138; Green v. Symonds, 1 Bro. C. C. 129, note; Colleton v. Garth, 6 Sim. 19; Heseltine v. Heseltine, 3 Madd. 276. In Shaftsbury v. Shaftsbury, 2 Vern. 747, after the bequest of the goods in a certain house, the steward of the testator, in the latter's absence, removed them to another house, on account of the expiration of the lease. It was considered an ademption, the testator having approved the move; but, if it had been fraudulently done, to defeat the legacy, or by tortious act with the testator's privity, the legacy would have passed. See, generally, Domvile v. Taylor, 32 Beav. 604.

The removal of goods for a necessary purpose is not an ademption of a specific legacy: Moore v. Moore, 1 Bro. C. C. 127; as where removed from a ship if likely to founder, or a burning house: Chapman v. Hart, 1 Ves. 271, in which case a distinction is made between a legacy of goods on board a ship and in a house.

If the removal be temporary, the goods pass, as the intent is to return them, but not if taken permanently: Spencer v. Spencer, 21 Beav. 548. Intention, however, alone is not enough. In Beaufort v. Dundonald, 2 Vern. 739, one devised furniture in his house at D. and ordered goods to be carried from London thereto, making arrangements with carriers for that purpose. Before the goods were removed he died, and they were held not to pass by will, the mere intention to remove them not being sufficient.

Where a testator devised goods in a certain house at his death, and the tenant in possession thereof refused to allow him to place certain goods there, he wishing to do so, and in consequence of such refusal he stored them in farm buildings belonging to him, where they were at his death, there was no ademption: Rawlinson v. Rawlinson, L. R. 3 Ch. D. 302.

The Renewal of a Lease Devised works an ademption, for it is the old lease alone which is given, and that is gone: Updike v. Thornton, 100 Ill. 406; Colegrave v. Manby, 6 Madd. 72; Home v. Medcraft, 1 Bro. C. C. 261; Abney v. Miller, 2 Atk. 593. It is, however, a question of intention, and if the testator so desires he may dispose of a future interest in a chattel real: Slatter v. Noton, 16 Ves. Jr. 197; Colegrave v. Manby, 6 Madd. 72; Carte v. Carte, 3 Atk. 174. In Digby v. Legard, Dick. 500, the renewal of leases for lives was held a revocation as to them, but not as to leases for years, they being personalty. In Porter v. Smith, 16 Sim. 251, an ademption was held to be worked by the testator taking an assignment of the original lease bequeathed: See, also, Rudstone v. Anderson, 2 Ves. 418.

Where there was a general bequest of "all my leasehold estates," and the testator afterward surrendered and took a new lease, a revocation resulted: James v. Dean, 11 Ves. Jr. 383; but the court there held it depended upon the context of the whole will, whether the

general doctrine should be applied; and in Stirling v. Lydiard, 3 Atk. 199, a bequest of "all and singular my leasehold estates" was held to be a general legacy, and the subsequent renewal of a lease passed.

Demonstrative Legacies.—While a specific legacy is subject to ademption by failure of the thing bequeathed to be in esse at the time of the testator's death, neither general nor demonstrative legacies are so subject thereto. It therefore becomes of the highest importance to distinguish between these kinds of bequests. "A demonstrative legacy is a legacy of quantity, with a particular fund pointed out for its satisfaction, and it is so far general and differs so much from one properly specific, that if the fund be called in or fail, the legatee will not be deprived of his legacy, but be permitted to receive it out of the general assets; yet is so far specific that it is not liable to abate with general legacies upon a deficiency of assets: 2 Lomax on Executors, 70; 2 Williams on Executors, 1252; 2 Redfield on Wills, 137; Corbin v. Mills, 19 Gratt. (Va.) 438; 3 Pomeroy's Equity Jurisprudence, sec. 1133"; Morris v. Garland, 78 Va. 215. And see Roquet v. Eldridge, 118 Ind. 147, 20 N. E. 733. So where a testator bequeathed to his daughter a certain sum to be paid out of the profits of certain real estate, it was held a demonstrative legacy, and a subsequent disposition of that estate did not extinguish the legacy, which was then payable out of the general assets: Welch's Appeal, 28 Pa. 363. And a legacy to be paid out of the testator's life insurance is payable out of the general assets of the estate if the insurance is not collected, being demonstrative: Byrne v. Hume, 86 Mich. 546, 49 N. W. 576. But where the legacy is so connected with the fund out of which it is payable that the legacy and fund are the same, it is specific: Smith's Appeal, 103 Pa. 559.

A bequest of "$2,000 of the S. W.," by a person owning $10,000 worth of bonds known by that designation is demonstrative, and not adeemed by the payment thereof to the testator: Ives v. Canby, 48 Fed. 718. See, also, Mahoney v. Holt, 19 R. I. 660, 36 Atl. 1; Botkin v. Boykin, 21 S. C. 513; Morriss v. Garland, 78 Va. 215. The collection of certain claims against the government, bequeathed by will, was held to adeem the legacy, if paid during the testator's lifetime, being considered specific, and not demonstrative: Georgia Infirmary Co. v. Jones, 37 Fed. 750, making the distinction before referred to, as to the gift out of a fund and the identity of the gift with the fund.

A bequest of "the sum of $1,200 and interest on the same contained in a bond and mortgage," described in the will, with a subsequent provision that the same is given the legatee for life, with a limitation over, is not a specific, but a demonstrative, legacy, and is not adeemed by the assignment or extinction of the bond and mortgage in the lifetime of the testator: Giddings v. Seward, 16 N. Y. 365.

**Construction by Court.**—In construing a legacy, courts lean in favor of a general legacy. Where they are clearly defined, they will be given their legal effect: Ludlam's Estate, 13 Pa. 188; but, unless clearly so intended, will not be so construed: Corbin v. Mills, 19 Gratt. (Va.) 438. The reason for thus leaning against specific legacies is stated as follows, in Kunkel v. Macgill, 56 Md. 120: "If the legacy is to be considered specific, then in the event of the testator's parting with the thing or property bequeathed, or if from any cause it should be lost or destroyed, the legacy fails. Then again, such legacies are not liable to abatement with general legacies, nor are they liable to contribution toward the payment of debts. And hence the inclination on the part of the courts to construe legacies as general, unless a contrary intention plainly appears."

**Mortgage as Revocation of Devise.**—A devise is not revoked by a mortgage to the devisee: Baxter v. Dyer, 5 Ves. Jr. 656, overruling Harkness v. Bayley, 1 Prec. Ch. 514. In McTaggart v. Thompson, 14 Pa. 149, however, the mortgage of an estate devised was considered a revocation pro tanto.

A mortgage executed by a testator after making his will does not manifest an intention to revoke, unless the will or the instrument creating the charge shows such to have been his intention, under an Alabama statute, and any interest or right of redemption or other right remaining in the testator at his death would fall within the operation of the bequest: Stubbs v. Houston, 33 Ala. 555.

In Yardley v. Holland, L. R. 20 Eq. 428, the court held that the purchase by the testator of the equity of redemption revoked the devise by his will, not only of the beneficial interest, but of the legal interest in the mortgaged property.

**Effect of Codicil on Adeemed Legacies.**—The authorities uniformly hold that the confirmation of a will by a codicil does not set up a legacy which has been adeemed since the execution of the will: Ware v. People, 19 Ill. App. 196; Howze v. Mallett, 4 Jones Eq. (N. C.) 194; Alsop's Appeal, 9 Pa. 374; Garrett's Appeal, 15 Pa. 212; Montague v. Montague, 15 Beav. 565; Cowper v. Mantell, 22 Beav. 223; Powys v. Mansfield, 3 Mylne & C. 359; Booker v. Allen, 2 Russ. & M. 270. See, also, Sidney v. Sidney, L. R. 17 Eq. 65.

In Hopwood v. Hopwood, 22 Beav. 488, a testator, in 1829, directed his trustees to raise £5,000 for his son; in 1835, on his son's marriage, he covenanted to pay £5,000 to the trustees of his son's settlement. In 1850, after referring to the legacy of £5,000 to his son, he directed his trustees to raise a further sum of £7,000. It was held that the first bequest was not adeemed, and that all three were payable; and that it was a question of intention in making the codicil.

As to a codicil rebutting the presumption of ademption, see De Groff v. Terpenning, 14 Hun (N. Y.), 301.

Where a testator, having given a general legacy, by a subsequent instrument makes it specific, the ademption of the specific legacy, without more, will not set up the general legacy: Hertford v. Lowther, 7 Beav. 107.